Thomas **TOWNSEND** and Roosevelt Terry, Plaintiffs-Appellants,

v.

Lynn **BOMAR**, Warden, Tennessee State Penitentiary, Defendant-Appellee.

No. 16212.

United States Court of Appeals Sixth Circuit.

Oct. 16, 1965.

Kenneth L. Roberts (court appointed), Nashville, Tenn., for appellants.

Henry C. Foutch, Nashville, Tenn. (George F. McCanless, Atty. Gen. and Reporter, State of Tennessee, of counsel), for appellee.

Before WEICK, Chief Judge, MILLER, Circuit Judge, and BOYD, District Judge.*

WEICK, Chief Judge.

This is an appeal from an order of the District Court denying each appellant's petition for a writ of habeas corpus. The two petitions were consolidated' for hearing. The case has been before us previously. On that occasion we vacated the order of the District Court denying the petitions for a writ of habeas corpus and remanded for the purpose of holding a hearing and making factual findings as to whether petitioners were denied an opportunity to reasonably prepare their case in the state court in which they were convicted. 331 F.2d 19 (C.A. 6, 1964).

The District Judge conducted a hearing on the habeas corpus petitions fol-

* Marion S. Boyd, Chief Judge, United States District Court, Western District of Tennessee, sitting by designation.

lowing the remand and found that appellants were not denied an opportunity to reasonably prepare their case. He therefore denied the petitions. The case is again before us for review.

Appellants were illiterate Negroes, 21 and 19 years of age respectively at the time of their convictions which are involved in said habeas corpus proceeding.[1] They had been serving other sentences at Fort Pillow State Prison Farm in Lauderdale County, Tennessee, for felony convictions in the State Court. About five hundred fifty prisoners, white and non-white, were confined in that institution.

There was an alleged riot at the prison farm on July 1, 1958. On October 9, 1958, Appellants were taken from the prison farm to the court house in Lauderdale County. Court opened at nine o'clock A.M. and appellants learned for the first time that they had been indicted on October 7, 1958, for participation in the riot.[2]

The Court appointed separate counsel for each appellant from lawyers who were seated in the court room. Appellants were arraigned and entered pleas of not guilty. Counsel then conferred with their clients in a room provided for that purpose and also in the court room. The evidence is in dispute as to the length of time counsel conferred with appellants. Appellants testified that it was fifteen to twenty minutes; the attorneys testified that it was from forty-five minutes to an hour or two. The attorneys also talked with the Deputy Warden of the prison farm, who was the principal witness for the state. However, no investigation as to the facts was made by defense counsel at the prison farm, nor were any of the inmates interviewed.

The impanelling of the jury started shortly after ten o'clock A.M. The state completed its case in the afternoon, except for one witness. Townsend testified in his own behalf. No other witness was called by the defense.

The case was concluded on October 10th, and resulted in the conviction of both appellants, who were sentenced to life imprisonment. No motion for a new trial was filed and no appeal was taken.[3]

No application for a continuance was made before trial. The Circuit Judge who tried the case testified that if the lawyers had asked for a continuance he would have granted it in accordance with his custom, and that the lawyers were familiar with this practice.

The evidence is conflicting as to the conversations between the lawyers and the appellants on the subject of a continuance. The lawyers testified that appellants did not ask for or want a continuance. The attorney for Terry, in a letter addressed to the Assistant Attorney General, which letter is attached as an exhibit to Appellee's Answer filed in the District Court, stated that the appellants "insisted" that the trial go forward. This would appear to be unusual, particularly since they did not know they had been charged until they were brought into court for trial.

Terry testified that he requested his attorney to obtain a continuance so that he could employ counsel out of that jurisdiction. He testified:

"Q  If you could have obtained a continuance, what could you or would you have done?

"A  Well, if I had gotten a continuance, I would have had the opportunity to subpoena witnesses, and

1.  Terry passed the third grade in school. Townsend's schooling does not appear in the record, but from his answers to questions it appears he has less intelligence than Terry.

2.  The Tennessee Statute under which the indictment was drawn is § 41–708 Tenn. Ann.Code, which provides:
    "Rebellion with intent to kill or escape. —If any convict confined in the peniten-

tiary for a term less than life, openly rebel with intent to kill the warden or any other officer thereof, or with intent, by open violence, to escape, he shall, on conviction thereof, be imprisoned in the penitentiary for life."

3.  Habeas corpus proceedings in the State Court in Tennessee resulted in adverse judgments. Appeal to the Tennessee Supreme Court was dismissed.

I could have asked my lawyer to seek a change of venue because I feel that the Warden—And the Warden at that time were Mr. Barfield. I felt at that time he—he had too much influence in the county, and that the lawyer was familiar with the personnel working at the penitentiary. I couldn't see no ground for me getting a fair trial in that county.

"Q Did you have any possibility of getting any financial help?

"A Oh, yes, sir. If I—If I was granted a continuance, I'd get in touch with my parents.

"Q Do you think they could have helped you?

"A Yes, sir."

Terry also testified that he asked his attorney to file a motion for a new trial and to appeal. This testimony was denied. Both appellants testified that they did not know they had the right to address the Court.

Townsend made no request for a continuance but testified that he was ignorant as to his rights. The attorneys also testified that they were not furnished the names of any witnesses by the appellants.

Evidence was offered by the state in the habeas corpus proceeding as to the educational background and trial experience of the defense attorneys and their efforts to conduct a vigorous defense at the trial. The District Judge made findings that the attorneys were eminently well qualified and conducted a vigorous defense. But conceding the truth of this evidence, it can hardly serve as a substitute for adequate preparation for trial, which, in our judgment, could not be made in such a short time as was provided in this case.

Whether an investigation of the facts at the prison farm would have produced results, no one can tell; certainly not at this late date. But no time was allotted or taken for an investigation except for the conference with the clients and with a witness for the state.

It took the state from July 1 to October 7 to procure an indictment. In view of the delay in charging the appellants, it is difficult to understand why the case was brought to trial so soon after the arrest and return of the indictment.

§ 40–2005 Tenn.Ann.Code provides:

*"Time before trial—Noncapital cases.—*Every person accused of any crime or misdemeanor whatsoever shall be entitled to two (2) full days (Sundays and holidays excluded) after arrest and the return of the indictment or presentment before being tried for such offense."

■■ In our judgment this statute was violated by the procedure followed in the present case. But we base our decision, not on the violation of the Tennessee statute, but on the due process clause of the Fourteenth Amendment to the Constitution of the United States, which, as construed by the Court requires effective assistance of counsel in a criminal case. Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945); White v. Ragen, 324 U.S. 760, 764, 65 S. Ct. 978, 89 L.Ed. 1348 (1945); Powell v. State of Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932); McBee v. Bomar, 296 F.2d 235 (C.A. 6, 1961).

■ The efforts of the state to provide for a speedy trial of a criminal case are laudable, but certainly they must be exercised with due regard for the constitutional right of the defendant to have adequate time to prepare his defense.

In United States v. Helwig, 159 F.2d 616 (C.A. 3, 1947) counsel was appointed for an indigent defendant held in custody, one minute before trial. The record did not show that a motion for continuance had been made. Circuit Judge Biggs, who wrote the opinion for the Court, said at page 618:

"We are of the opinion that counsel for an indigent defendant, held in custody, must be appointed by the court sufficiently far in advance of trial to enable counsel adequately to prepare the defense. In the case at

bar the period given for preparation was too brief."

The offense charged in the case at bar was a serious one, requiring upon conviction the imposition of a sentence of life imprisonment upon young men. The Court should have accorded them a reasonable time to enable their counsel to prepare properly the case for trial. The time allotted was too brief for this purpose. Furthermore, it gave the appellants no time even to collect their own thoughts, let alone to contact relatives or friends or to plan or assist in planning their defense.

We are not willing to hold that these appellants have waived their constitutional rights to the effective assistance of counsel, which we believe was denied to them because of the shortness of the time allowed by the Court for preparation for trial. Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). We are convinced upon consideration of the entire evidence offered in the District Court that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1947).

The judgment of conviction was in violation of the constitutional rights of appellants and is therefore void.

The judgment of the District Court is vacated and the case is remanded with instructions to grant appellants' petitions for release, unless the state within a time to be fixed by the Court, desires to retry appellants.

BOYD, Chief Judge (dissenting).

The majority seems to hold that appellants were denied due process because of a denial to them of effective assistance of Court-appointed counsel, in particular that appellants were required to stand trial in a criminal case in a Tennessee State Court the same morning of their arraignment, the main insistence being

that adequate time within which to prepare for trial was not afforded appellants.

I would affirm the judgment below on the basis of District Judge William E. Miller's findings which are clearly supported by substantial evidence that Honorable Mark A. Walker who presided at the trial of appellants in the State Court was a thoroughly competent judge and performed his duties in the trial court with due regard for the rights and privileges of the appellants under the Constitution, and that Court-appointed counsel for appellants were capable and experienced in the criminal laws and procedures of the State of Tennessee and represented their clients adequately and protected all of their rights at every stage of the proceeding. The District Judge after a full hearing ruled counsel had adequate time within which to prepare for trial.

While the time interval between arraignment and trial was short in this instance, each case must be considered upon its own peculiar facts. No set rule, to be applied in all cases, as to the interval of time can be imposed and adhered to as a matter of law. From the record in the District Court, counsel for appellants knew a continuance of their clients' case was open to them had such request been made of the Court. Neither counsel nor appellants desired a delay or deemed one necessary since they under the circumstances considered they had adequate notice and opportunity to confer for the preparation of a proper defense.

I am unable to find in the record that the appellants' rights were in any way prejudiced as a result of the prompt trial of their case in the State Court. The trial lasted for two days, during which counsel and their clients conferred freely. The Fort Pillow prison at which the riot in which the appellants allegedly participated and in which the appellants were imprisoned prior to and at the time of their trial, was in close proximity to the site of the State Court hearing and easily accessible for any necessary investigation.

In the circumstances of this case it cannot, in my opinion, be said appellants were required or permitted to stand trial in the State Court herein in such a way as to be deprived of effective assistance of counsel under the Constitution.