UNITED STATES of America,
Plaintiff-Appellee,

v.

Lawrence W. MEDLIN, Defendant-Appellant.

No. 16034.

United States Court of Appeals
Sixth Circuit.

Dec. 29, 1965.

David B. Kirschstein, New York City (Kirschstein, Kirschstein & Ottinger, New York City, on the brief), for appellant.

Harry Price, New York City, for appellee.

Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

½

R. B. Parker, Jr., and James H. Bateman, Nashville, Tenn., for appellant.

Ronald L. Gainer, Dept. of Justice, Washington, D. C., Herbert J. Miller, Jr., Asst. Atty. Gen., Beatrice Rosenberg, Atty., Dept. of Justice, Washington, D. C., James F. Neal, U. S. Atty., Nashville, Tenn., on brief, for appellee.

Before CECIL, O'SULLIVAN and PHILLIPS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Defendant-appellant, Lawrence W. Medlin, was convicted on the second count of a five count indictment in which he, together with James Hoffa and five others, was charged with attempting to obstruct the due administration of justice in a United States District Court in violation of 18 U.S.C.A. Sections 2 and 1503. Specifically, Medlin was charged

with attempting to influence one James C. Tippens, selected for service as a juror in such United States District Court, by informing the said Tippens that he would be paid $10,000 if he would vote for the acquittal of James R. Hoffa in a trial then pending in such District Court.[1] The involved indictment, returned in the Middle District of Tennessee, would normally have been set for trial in that district. However, upon motion of Hoffa and others the trial was transferred from Nashville to Chattanooga in the Eastern District of Tennessee. The motion to transfer had been made on the ground that prejudicial publicity had made it impossible for Hoffa and his codefendants to receive a fair trial at Nashville. Thereafter, on January 20, 1964, under direction of an order of this Court (CA 6, 1964, No. 15,719) the District Judge granted Medlin's motion for a separate trial and vacated, as to Medlin alone, the order transferring the trial to Chattanooga. Shortly thereafter the trial of Hoffa and his other codefendants began at Chattanooga. Hoffa was found guilty on two counts and the other codefendants guilty on one count each. James Hoffa had been charged as an aider and abettor of Lawrence W. Medlin in count two of the indictment, but a judgment of acquittal was directed because, the testimony of the accusing witness Tippens having been excluded, there was insufficient evidence. The trial at Chattanooga was concluded on March 4, 1964, and Hoffa and others were there sentenced on March 12, 1964. The trial, conviction and sentencing of Hoffa and his codefendants was the subject of much interest and coverage in all of the news media. The trial of appellant Medlin was commenced at Nashville on March 30, 1964, and terminated April 3, 1964.

The errors claimed by appellant are broadly: (1) that he should have been given a continuance because of publicity arising from the Hoffa trial; (2) that his counsel was denied adequate time to prepare for trial; (3) that his counsel should have been permitted to inform the jurors that Hoffa had been acquitted of aiding and abetting Medlin; (4) that the evidence was insufficient to go to the jury; (5) that a new trial should have been granted because

(a) of improper argument to the jury by government counsel,

(b) instructions on the subject of reasonable doubt were improper, and

(c) he had been denied the effective assistance of counsel because of the physical and mental exhaustion of his attorney during the trial; and

(6) that the grand jury which indicted Medlin was illegally composed.

On March 14, 1964, two days after the sentencing of Hoffa and others, Medlin's case was set to be tried at Nashville on March 30, 1964. On March 25, appellant's counsel filed a motion for continuance. It was bottomed upon the claim that the publicity which had attended the trial, conviction and sentencing of Hoffa and others, and the publicity given to the setting of Medlin's trial foreclosed a fair trial of Medlin's case upon the date set. The motion also asserted that court engagements of appellant's counsel, made prior to the setting of the Medlin trial date, would prevent Medlin from having the effective assistance of his chosen counsel because of the shortness of time to prepare. This motion was denied on March 27. A second motion for continuance was filed on March 30, 1964, reasserting the grounds of the first motion, and adding the averment that in the short time permitted him by the District Judge's setting of a trial date, Medlin's counsel, R. B. Parker, Jr., of the Nashville Bar, had been unable to make sufficient preparation to afford Medlin the adequate assistance of counsel guaranteed by the United States Constitution.

---

[1]. The attempted jury tampering charged in the involved indictment was alleged to have occurred in connection with the trial at Nashville, Tennessee, of the case of United States v. James R. Hoffa and Commercial Carriers, Inc. Such trial ended December 23, 1962, in a jury disagreement.

### 1) Denial of continuance because of prejudicial publicity.

■■ Appellant's motion for continuance was supported by newspaper clippings from Nashville and elsewhere concerning the Hoffa trial and the setting of the Medlin trial at Nashville. There was a stipulation that various radio and television stations had carried the same news stories. The District Judge denied this motion holding that whether pretrial publicity would prevent a fair trial could be better determined after the voir dire examination of the jurors. Upon such examination, inquiry was made of the jurors' acquaintance with the publicity and whether any opinions had been formed as to the guilt of Medlin. Each juror questioned on the subject said he was without any such opinion and while various jurors disclosed some familiarity with the Hoffa trial at Chattanooga, there was little indication of the jurors' previous knowledge of any connection between Medlin and Hoffa. No juror was challenged for cause. The District Judge was of the view that the involved publicity had not given much attention to the Medlin case, and concluded that the motion was not well taken. It was proper for the District Judge to defer consideration of the effect of publicity until relevant inquiry could be made upon the voir dire examination of the jury. Hoffa v. Gray, 323 F.2d 178, 180 (CA 6, 1963) cert. denied, 375 U.S. 907, 84 S.Ct. 199, 11 L.Ed.2d 147 (1963); United States v. Kline, 205 F.Supp. 637, 638 (D.Minn. 1962); Wolfe v. Nash, 313 F.2d 393 (CA 8, 1963) cert. denied, 374 U.S. 817, 83 S.Ct. 713, 10 L.Ed.2d 1041 (1963); Mayo v. Blackburn, 250 F.2d 645 (CA 5, 1957) cert. denied, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958); United States v. Bando, 244 F.2d 833, 838 (CA 2, 1957) cert. denied, 355 U.S. 844, 78 S.Ct. 67, 2 L.Ed.2d 53 (1957). It is likewise the law that disposition of a motion for continuance based upon claimed prejudicial publicity is within the discretion of the District Judge who must evaluate the extent and character of the publicity relied upon. Estes v. United States, 335 F.2d 609, 614 (CA 5, 1964) cert. denied, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965); United States v. Lombardozzi, 335 F.2d 414, 416–417 (CA 2, 1964) cert. denied, 379 U.S. 914, 85 S.Ct. 261, 13 L.Ed.2d 185 (1964); Hoffa v. Gray, 323 F.2d 178 (CA 6, 1963), cert. denied, 375 U.S. 907, 84 S.Ct. 199, 11 L.Ed.2d 147 (1963); United States v. Decker, 304 F.2d 702, 704 (CA 6, 1962); Bearden v. United States, 304 F.2d 532 (CA 5, 1962), vacated on other grounds, 372 U.S. 252, 83 S.Ct. 875, 9 L.Ed.2d 732 (1963), on remand 320 F.2d 99, 101–103 (CA 5, 1963), cert. denied, 376 U.S. 922, 84 S.Ct. 679, 11 L.Ed.2d 616 (1964). It should be noted, relevant to the effect of any pretrial publicity, that upon the opening day of the Medlin trial at Nashville there were but three or four spectators in the courtroom.

■ It must be recognized that the several indictments and trials of Mr. Hoffa and his associates over the past several years have continuously been given prominence in all news media. Such prominence continues. We are not persuaded, however, that the courts of this country are now impotent to provide a fair trial to Mr. Hoffa and those associated with him. This court has reviewed the publicity that preceded and surrounded Mr. Hoffa's trial at Chattanooga, and found that it did not foreclose the impaneling of a proper jury, nor the conduct of a fair trial. United States v. Hoffa et al., 349 F.2d 20 (CA 6, 1965). Our decision in United States v. Bell, 351 F.2d 868 (CA 6, 1965) involved the trial of another person indicted for attempting to bring about the bribery of jurors in the 1962 trial of James R. Hoffa. We there dealt with facts and contentions so similar to the case at bar that Bell provides precedent for our decision here. We find no abuse of discretion in the denial of continuance on the grounds just considered.

### 2) Inadequate time to prepare.

The second motion for continuance was filed on March 30, the date set for commencement of the trial, and in such mo-

**793**

tion counsel averred that he had not had time in which to adequately prepare. He detailed the long hours that he had been required to spend in preparing his prior motion for continuance and in giving some attention to other obligations of his practice.[2]

The second motion was denied. We find no reversible error in such denial. Counsel who made the motion had been engaged by Mr. Medlin close to a year prior to the trial date and in that period of time had employed numerous pretrial procedures to prepare for presentation of Medlin's defense. Neither in the March 30 motion nor in appellant's address to this court is there set forth anything that counsel might have done by way of legal research, factual investigation, or other preparation that would have enhanced his presentation of appellant's defense. While the time between the setting of the trial and the trial date was relatively short, it was within the discretion of the trial judge to require that the trial proceed. United States v. Decker, supra; contrast Townsend et al. v. Bomar, 351 F.2d 499 (CA 6, 1965). No resulting prejudice to appellant has been shown and we find no abuse of discretion in what was done.

### 3) Denial of permission to inform the jurors of James Hoffa's acquittal.

At the beginning of the voir dire examination, counsel were asked how they proposed to handle the reading of count two of the indictment. This was the count upon which Medlin was to stand trial and in such count James Hoffa was charged with aiding and abetting Medlin. Hoffa had already been acquitted of such charge. Government counsel suggested that the charge against Hoffa be deleted in the reading of the indictment and that no reference thereto be made in examining the jurors. Appellant's counsel would not go along with such suggestion and urged that count

two of the indictment be read in full and the jury informed of Hoffa's acquittal of such charge. The indictment was read in full and the jury thus informed that Mr. Hoffa had been indicted with Medlin in count two. While the District Judge formally sustained the government's objection to defense counsel informing the jury of Hoffa's acquittal, the questions put by Medlin's attorney appear to have placed this information before some, if not all, of the jurors. In all events the jurors examined on the point stated that they would not be affected by Medlin's charged involvement with Mr. Hoffa. The jury was instructed that the count two charge against Mr. Hoffa, and its disposition, should not be considered in determining the guilt or innocence of appellant. Defense counsel's closing argument to the jury contained extensive reference to the joint indictment of Medlin and Hoffa and repeated admonitions to the jury to give no attention to such fact. We find no error in what occurred in this regard.

### 4) Sufficiency of evidence.

James C. Tippens was in the insurance business in Nashville, Tennessee. Defendant Medlin was a proprietor of a sandwich shop in the same city. These men had been friends for some years prior to 1962. Often Tippens would stop at Medlin's sandwich shop before returning home after work. The claimed offense occurred during the picking of a jury for the trial of the case of United States v. James R. Hoffa and Commercial carriers, Inc. This began on October 22, 1962, with United States District Judge William E. Miller presiding. Tippens was a member of the jury panel called for such trial.

The Government's case contained the following proofs. Defendant Medlin knew that Tippens had been called for jury service. Tippens stated that in the evening of October 23, 1962, the same day he was tentatively accepted as a

---

2. Mr. Parker's letterhead indicated he had some eight associates or partners. No reason in given why he did not have their assistance in preparing for trial, and at the trial if necessary.

juror on the Hoffa case, he went to Medlin's place of business in response to a message that Medlin wished to see him. He testified that after waiting for Medlin to conclude some work, Medlin asked him to come outside and talk. They went to Tippen's car which was parked at the rear of Medlin's sandwich shop. The following is a quotation from Tippens' account of the conversation that ensued:

"He said, 'We've got a chance to make some big money.' And I became suspicious and I said, 'Now, if it has anything to do with the Hoffa case, Red, I'm not supposed to talk about it.' And he said, 'Well, there is a lot of money involved. There is $10,000.00. And nobody will know where it came from.' And I said, 'Well, I'm not interested at all.' And I said, 'I'm not at all interested in it and I'm not supposed to talk about it.' He said, 'It will only take one vote and it may not take that.' I said, 'Well, I don't care anything about that either if it was a million dollars, it wouldn't make any difference.' And then we proceeded to talk about something else."

Tippens added that Medlin had spoken of the money being delivered in one hundred dollar bills. He further testified that following the above conversation he telephoned his own attorney and related what had happened. The next morning he talked to Judge Miller, seeking to disqualify himself because of what had occurred. Ultimately, under questioning by the judge, he revealed the name of appellant Medlin. Tippens was excused from sitting on the Hoffa jury.

On the afternoon following his discussion with the judge, Tippens sought out Medlin and informed him that he had disclosed the previous evening's conversation. Medlin expressed his regret that Tippens had done so, making the observation "it is a serious offense and it will have to be a good story." It was further testified that Medlin thereupon said that a man had called him the previous evening and asked him for Tippens'

answer, and that having been told that Tippens would not agree, the man replied, "Well, there is no harm in trying."

Medlin took the stand and denied Tippens' version of their talks. It was for the jury to resolve the issue of fact made by the conflicts between the two stories. Medlin was interviewed by the Federal Bureau of Investigation and made certain denials which he later admitted were false. His account of what actually happened was as follows. He stated that some days before his conversation with Tippens he had been in a cafe in a community called Brentwood, a suburb of Nashville; that while sitting in a booth he heard three men in an adjoining booth mention the name of Jimmy Tippens and say, in effect, that they were "going to offer Jimmy Tippens $10,000 in one hundred dollar bills." Medlin claimed that he merely told Tippens what he had heard. Initially Medlin had denied to the FBI that he had spoken to Tippens either on October 23 or on the next day, October 24. He did state that he had construed the conversation in the cafe booth in Brentwood as indicating that Tippens was to be paid $10,000 if he would vote for the acquittal of Hoffa. At the trial Medlin stated that until he had heard this conversation between the men in Brentwood he had not known who Hoffa was nor even heard the name of Hoffa.

Tippens' testimony does not in exact words say that Medlin offered $10,000 to have Tippens vote for the acquittal of Hoffa. A jury, however, would be justified in so construing the quoted language and inferring the intended objective of Medlin's communication to Tippens.

■■ It is familiar law that on the question under consideration the testimony is viewed in the light most favorable to the government, including the inferences that could be legitimately drawn therefrom. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Barnes, 313 F.2d 325, 326 (CA 6, 1963); United States v. Decker, 304 F.2d 702, 705 (CA 6, 1962). Applying such rule, we hold

that there was sufficient evidence to go to the jury.

5) Denial of motion for new trial.

a) Alleged improper argument by government counsel.

■ No objection was made to the criticized argument. Unless we are of the view that it was so inflammatory and prejudicial as to be beyond correction by action of the trial judge, we should follow the law that failure to object to the accused argument forecloses its use as a ground for new trial. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 238–239, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); United States v. Rayborn, 310 F.2d 339, 340 (CA 6, 1962), cert. denied, 373 U.S. 952, 83 S.Ct. 1683, 10 L.Ed.2d 707; Robinson v. United States, 144 F.2d 392, 406 (CA 6, 1944), aff'd 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945).

The case at bar was vigorously tried with the prosecution and the defense represented by aggressive and able advocates. In the final arguments to the jury each employed impassioned address not unwonted in American courtrooms.

Defendant had offered several character witnesses. In closing argument the government attorney stated:

"It is a bad thing for a man of good character to get in trouble. Benedict Arnold, when he betrayed his country had as fine a character as any man in the nation. Judas Iscariot, the disciple, when he betrayed his Lord had as fine a character as anyone perhaps in the land.

"But unfortunate as it is, men who can show good character which stands as a witness for him, frequently commit offenses against the law and it is your responsibility to determine whether or not this defendant did commit such an offense."

■ We do not construe the foregoing as calling appellant Medlin a Benedict Arnold or a Judas Iscariot. We will not take notice of it as plain error. Rule 52(b) Fed.R.Crim.P.

■ In closing, appellant's attorney argued in substance that his client was the innocent victim of a war on the "new frontier" between Robert F. Kennedy and James R. Hoffa. Government counsel responded that, on the contrary, the prosecution of Medlin arose from a war on jury tampering. The antagonists supported their respective positions with colorful oratory. In the context of the lawsuit before us, we cannot say that the District Judge abused his discretion in refusing to find that the foregoing exchange called for the granting of a new trial. It was a matter within his discretion. Carter v. United States, 231 F.2d 232, 236 (CA 5, 1956); Henderson v. United States, 204 F.2d 126, 127 (CA 6, 1953); Weiss v. United States, 122 F.2d 675, 690 (CA 5, 1941); Cf. Obery v. United States, 95 U.S.App.D.C. 28, 217 F.2d 860, 862 (CA D.C.1954); Aeby v. United States, 206 F.2d 296, 300 (CA 5, 1953).

Appellant further charges that government counsel expressed a personal conviction that defendant was guilty. Such charge arises from the following:

"I'm a lawyer, Special Prosecutor for the Department of Justice to present the facts to you and I've got a responsibility just like you, I would be violating my responsibility, violating my oath as a lawyer if I stood here this morning and exhorted you to convict a man that I believe was innocent. I wouldn't do that any more than I know that you wouldn't vote to convict a man that you thought was innocent. But I have the courage and I believe you have on these facts regardless of what sympathy you might have, it is a bad thing, but when the laws of the United States have been flaunted and violated and trampled under foot, we accepted you as jurors because we thought you had the kind of integrity, the kind of honor, the kind of character that would meet that test."

While not entirely clear, we assume that such remarks of government coun-

sel could be construed as an expression of his belief that defendant was guilty.

■■■ Expression of a prosecutor's personal belief of the guilt of a defendant has been condemned by state court decisions, and the First Circuit did so in Greenberg v. United States, 280 F.2d 472, 474–475 (CA 1, 1960). Such, however, has not been the rule in the United States Courts generally, nor in this Circuit where such expression by a prosecutor does not hint that such belief is supported by something other than the evidence which came before the jury in open court. Henderson v. United States, 218 F.2d 14, 19, 50 A.L.R.2d 754 (CA 6, 1955), cert. denied, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1955); Tuckerman v. United States, 291 F. 958, 969 (CA 6, 1923), cert. denied, 263 U.S. 716, 44 S.Ct. 137, 68 L.Ed. 522 (1923); United States v. Sawyer, 347 F.2d 372 (CA 4, 1965); Orebo v. United States, 293 F.2d 747, 749 (CA 9, 1961), cert. denied, 368 U.S. 958, 82 S.Ct. 402, 7 L.Ed.2d 389 (1961); Thompson v. United States, 272 F.2d 919, 921 (CA 5, 1959), cert. denied, 362 U.S. 940, 80 S.Ct. 805, 4 L.Ed.2d 769 (1960); Schmidt v. United States, 237 F.2d 542, 543 (CA 8, 1956); United States v. Battiato, 204 F.2d 717, 718–719 (CA 7, 1953) cert. denied, 346 U.S. 871, 74 S.Ct. 118, 98 L.Ed. 380 (1953). Government counsel emphasized that his argument was based "on these facts" to-wit, the facts in proof. We are not prepared to hold that in this case the accused language called for the granting of a new trial nor that the District Judge abused his discretion in refusing to do so. Our review of the federal decisions relevant to the question under consideration leaves us with the impression that they announce no precise rule either of permission or prohibition easily applied without reference to the context of the particular case. See Anno. 50 A.L.R.2d 766.

b) Charge on reasonable doubt.

After the jury had been deliberating for about two and three-quarters hours they sent the following note to the District Judge: "Would you please review instructions with regard to reasonable doubt to the jury." In response the Court instructed the jury as follows:

"Ladies and Gentlemen, the jury has returned in the case. The court understands that the jury desires some additional instructions with regard to the court's former instructions upon reasonable doubt.

"And I would instruct you further, Ladies and Gentlemen, that a reasonable doubt is a fair doubt based upon reason and common sense and arising out of the state of the evidence. It is not a fanciful or an imaginary doubt or a doubt unrelated to the state of the evidence.

"A reasonable doubt would exist in the case when, after fair and impartial consideration of all the evidence, the jurors do not feel convinced to a moral certainty of the defendant's guilt as charged. To be satisfied beyond a reasonable doubt of the defendant's guilt does not mean that the government has to make out the case to an absolute certainty. It has to prove it only so as to leave no reasonable doubt of the defendant's guilt in the minds of the jury. It is not required that the government should exclude all doubt, but only to exclude reasonable doubt. If there should be evidence in the case that has created a reasonable doubt in your minds as to the guilt of the defendant, then the case is not made out beyond a reasonable doubt. But if there is no reasonable ground for doubting the defendant's guilt, then the case was made out beyond a reasonable doubt.

"Now, are there any other matters, further instructions desired at this time? * * *."

Defense counsel, then present, made no objection to the foregoing nor any suggestion that it should be supplemented. The claimed error is that what was said placed the burden of proving reasonable doubt upon defendant and failed to say that a reasonable doubt could arise from a lack of evidence. This is based on the sentence "that a reasonable

doubt is a fair doubt based upon reason and common sense and *arising out of the state of* the evidence," and upon the further language "if there should be evidence in the case that has created a reasonable doubt in your minds as to the guilt of the defendant, then the case is not made out beyond a reasonable doubt."

█ Here again, unless we felt that there was plain error and clear prejudice, it would be sufficient to remark that no objection was made to the foregoing nor a request that it be supplemented. Rule 30 Fed.R.Crim.P.; Ashe v. United States, 288 F.2d 725, 730 (CA 6 1961); Stanley v. United States, 245 F.2d 427, 436 (CA 6, 1957); Jackson v. United States, 179 F.2d 842, 843 (CA 6, 1950), cert. denied, 339 U.S. 981, 70 S.Ct. 1031, 94 L.Ed. 1385 (1950).

The quoted instruction did not specifically tell the jury that a reasonable doubt could arise from lack of evidence. The court did state, however, that a fair doubt is one that is based upon reason and "arising out of the state of the evidence." Defendant cites the following cases, Blocker v. United States, 110 U.S.App. D.C. 41, 288 F.2d 853 (CA D.C.1961); United States v. Cumberland, 200 F.2d 609 (CA 3, 1952); and Boatright v. United States, 105 F.2d 737 (CA 8, 1930), to support his claim of prejudicial error. They hold that if an instruction on a critical point such as reasonable doubt misstates the law, it may be prejudicial error even though a correct rule is announced elsewhere in the instructions. The accused supplemental charge on reasonable doubt did not misstate the law, although it did not contain an entire review of the subject. The District Judge had, at length and correctly, already given instructions on presumption of innocence, burden of proof and reasonable doubt, and at one point therein had said that "reasonable doubt may arise not only from the evidence produced, *but from a lack of evidence.*" Language not unlike that under criticism here has been heretofore approved by this court. Ashe v. United States, 288 F.2d 725, 730 (CA 6, 1961). See also Agnew v. United States, 165 U.S. 36, 51, 17 S.Ct. 235, 41 L.Ed. 624 (1897); United States v. Rinaldi, 301 F.2d 576, 578 (CA 2, 1962); Singer v. United States, 278 F. 415, 418 (CA 3, 1922), cert. denied, 258 U.S. 620, 42 S.Ct. 272, 66 L.Ed. 795 (1922). We do not find reversible error in what occurred in this regard.

c) Effective assistance of counsel.

█ Appellant contends that his counsel, Mr. Parker, by reason of the pretrial efforts that he was forced to compress into a short period of time, or possibly from causes then unknown to him, was so physically exhausted during the course of the trial as to be unable to give the defendant a proper defense. This presents a subject upon which we have no precedential guides. We at once recognize that persons charged with crime have the constitutionally guaranteed right to effective assistance of counsel upon trial.

As discussed hereinabove, defense counsel in his motion for continuance had asserted in addition to other grounds that he did not have time to prepare for trial, setting forth the long hours he had had to work in an attempt to get ready. During the course of the trial, Mr. Parker on several occasions announced to the court that he was physically tired and was not alert. At one time he stated that he felt as though he might "fall on his face." It should be immediately noted, however, that at no time did Mr. Parker ask the court to suspend the trial for one or more days to allow him the rest and refreshment a recess would have afforded him. After making several conclusional assertions that his physical condition was preventing him from exercising the alertness essential to effective representation, Mr. Parker on the fifth and final day of trial asked the court to declare a mistrial. He stated, "I think we are entitled to a mistrial to cure the situation. I don't think that a postponement at this time is feasible."

In his address to this court, Mr. Parker emphasizes that notwithstanding the District Judge's original announcement that the court days would run from 9:00 in the morning until 4:30 in the afternoon with a one and one-half hour recess for lunch, the trial extended beyond the closing time on all five days of the trial. It is not denied, however, that the overtime court sessions were on two occasions at the request of defense counsel. As to other days, defense counsel made no objection to running past the normal closing time. Dealing with this subject, the writer of this opinion expresses his own discomfort at the possibility that any trial judge would seek to exhibit his own vigor and efficiency by constantly extending the hours of court. Every trial judge should be aware that the discharge of his own responsibility is not at all attended with the same anxiety or nervous exhaustion that is the portion of the conscientious trial advocate on the other side of the bench. The record before us, however, does not justify a view that the District Judge in this case used his position to impose undue burdens upon defense counsel. Defense counsel did not request that the hours of trial be shortened or that a recess be taken. Once the continuance itself was denied, counsel made no request for any lesser concession; and indeed did not again directly raise the question until the last day of the trial, when he asked not for a recess or adjournment but for a mistrial.

In the motion for new trial, however, appellant's counsel buttressed his claim that he was physically exhausted during the trial by evidence that he suffered a collapse immediately following the trial. By testimony and affidavit it was shown that at the conclusion of the trial and after the verdict of the jury had been announced, Mr. Parker returned to his office and lay down on a davenport to rest. He immediately fell into a deep sleep and so remained until the next day when he was found there by his secretary. The secretary summoned a doctor who, after examining Mr. Parker, ordered him taken to a hospital. The doctor, a friend and client of Mr. Parker, testified that he had been unable to arouse Mr. Parker when he first examined him and that for some three days Mr. Parker remained in a heavy, though gradually diminishing sleep. Hospital records, compiled in part by Mr. Parker's doctor, were introduced. These disclosed a final diagnosis of Mr. Parker's difficulties as circulatory collapse; physical exhaustion, profound; and cholecystitus, subacute. The doctor expressed his opinion that Mr. Parker must have been in a state of physical exhaustion for at least three weeks prior to his collapse. The doctor stated that he would not care to have had Mr. Parker represent him in a serious law suit in the condition which the doctor thought must have been Mr. Parker's during the period of time he was trying the Medlin case. Mr. Parker was discharged from the hospital after four or five days and apparently was then fully restored to health and vigor. The District Judge made the following finding:

"[T]he Court made observations, of course, throughout the trial and has made careful observations today and I am unable to discern any difference whatsoever in the advocacy and the ability and the earnestness, awareness, and conduct of the defendant's counsel throughout the trial and his presentation today. Upon both occasions he had conducted Mr. Medlin's defense with quite thoroughness, with great skill and with great ability.

"Now, of course, after every trial it is always possible to look back upon that trial and see where you might as counsel have done things differently. But, of course, that does not constitute a basis for a new trial nor does it constitute grounds for stating that a defendant was without adequate counsel.

"The doctor indicated in his testimony that his observations of defendant's counsel's conduct in court today indicated that he was in pos-

session of all of his faculties and awareness and was indicating his normal performance as an attorney and yet his performance throughout the trial as best the Court could see and determine from all of the five days that the case was tried is—he appeared to the Court throughout the trial at any rate to have the same skill and ability that he has obviously demonstrated here today. He has done in the Court's opinion a very able job, and a very thorough job in the trial of this case * * *."

We may assume from the record of this case that Mr. Parker, to his credit and to the credit of his profession, employed all of his abilities in representing his client without reference to the drain upon his own nervous reserves and physical resources. We like to think that such is but typical of conscientious trial counsel. It is entirely possible that the burdens of preparing for trial and the trial, ending in an adverse verdict of guilty, were sufficient to bring on Mr. Parker's collapse without such collapse being proof that he had not effectively represented his client. We need not speculate in this regard. We think the District Judge who saw and observed Mr. Parker each day during the trial was in position to form a judgment from such direct observation which may be weighed against an opinion formed after the event by one who did not have such opportunity for observation.

Mr. Parker makes no claim that had he been in a lesser state of fatigue he would have tried his case any differently than he did. He does speculate that he might have objected to the claimed inflammatory argument of government counsel, or that he might have requested a more adequate instruction on reasonable doubt, as discussed above. The record, however, shows that he did object to some portions of government counsel's argument and to parts of the court's charge when the opportunity was given him. Appellee calls attention to a remark of Mr. Parker made at the end of the voir dire examination when, after expressing his surprise that so few of the jurors examined seemed to be familiar with the case about to commence, he observed "in the light of what I have heard here now that I'm feeling better and have had a little rest, *I'm raring to go with this jury.*" (Emphasis supplied.)

The trial contest of the case at bar was between the testimony of the accusing witness Tippens and that of defendant Medlin. The case was not complicated from the standpoint of investigation or presentation. We are pointed to nothing that a well-rested Mr. Parker might have done by way of more effectively cross examining Mr. Tippens or presenting Mr. Medlin's testimony as a more credible account in the eyes of the jury. The District Judge stated that in the trial of the case "he [Mr. Parker] had conducted Mr. Medlin's defense with quite thoroughness, with great skill and with great ability." Our own review of the record before us leaves us with the same impression, and we do not find cause to doubt the validity of the District Judge's quoted observation.

6) Composition of Grand Jury.

Appellant Medlin was indicted by the same grand jury that indicted James R. Hoffa and others. The legality of the composition of such jury was the subject of attack in the case recently decided by this court. United States v. Hoffa et al., 349 F.2d 20 (CA 6, 1965). By stipulation, the disposition of this question as to defendant Medlin was to be controlled by the disposition of the Hoffa case. In such decision this court held that the grand jury which returned the indictment involved had not been illegally composed.

Judgment affirmed.