THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
GABRIEL MALDONADO DIPINÍ and ALBERTO DE LA ROSA
TORRES, Defendants and Appellants.

No. CR-67-125.      Decided February 18, 1969.

Santos P. Amadeo for Alberto de la Rosa Torres. César Andréu Ribas and César Andréu Meguinoff for Gabriel Maldonado Dipiní. Rafael A. Rivera Cruz, Solicitor General, Peter Ortiz, Deputy Solicitor General, and Lolita Nieves Franqui, Assistant Solicitor General, for The People.

Mr. Justice Ramírez Bages delivered the opinion of the Court.

Information was filed against appellants charging them with robbery in subsequent degree, because on April 28, 1960, together with Luis M. Cestau, they entered the residence of Pedro Silva Pabón, his wife was inside the house, and one of them, armed with a revolver, threatened Petra Vélez and Narciso Félix Rivera, the gardener, and took a certain amount of money from the safe.

The trial of this case commenced on June 5, 1961. The jurors in attendance could not agree on a verdict. At a second trial, the presentation of the evidence terminated on May 29, 1962. After several interruptions because the jurors alleged that they could not agree upon a verdict or because of insufficient evidence, after 15 hours of deliberation, the jury found appellants guilty of robbery. It found a third codefendant, Luis M. Cestau, not guilty. The verdict was 9 to 3.

The pronouncement of judgment was set for June 11, 1962 at 9:00 a.m. but on motion of defendants' counsel, who informed that he intended to present a motion for new trial, the pronouncement was set for June 22, 1962. Subsequently it was set for July 2, 1962 because the defense alleged that the motion for a new trial was not ready yet. It was not until July 16, 1962 that the hearing of said motion was held. Judge Freyre having disqualified himself, the motion was argued before Judge Moreda and was finally denied on July 23, 1962. Then they proceeded to the pronouncement of judgment. Appellant Alberto de la Rosa was ordered to serve 10 to 15 years in the penitentiary at hard labor. Appellant Gabriel Maldonado Dipiní was ordered to serve 15 to 30 years in the penitentiary at hard labor. From the minutes of July 23, 1962 it appears that the penalty imposed on Alberto de la Rosa was not imposed for the violation of § 7 of the Weapons Law because the case "was dismissed on a previous date."

We conclude that said judgments should be affirmed. The reasons are stated below upon considering appellants' assignments.

1.—Appellants allege that "The verdicts returned by the jury against defendants-appellants are void, because they were not unanimous, as required by the Sixth Amendment to the Constitution of the United States, which governs in Puerto Rico, according to the rules established in the cases of *Balzac* v. *Puerto Rico*, 258 U.S. 298 (1922); *Reid* v. *Covert*, 384 U.S. 1 (1957) [*sic*—354 U.S. 1 (1957)]; and *Duncan* v. *Louisiana*, decided May 20, 1968."

■ This assignment lacks merit. This contention was decided against appellant in *Fournier* v. *González*, 80 P.R.R. 254 (1958) and in *Fournier* v. *González*, 269 F.2d 26 (1959) *certiorari denied*, 359 U.S. 931 (1959). Furthermore, identical question was raised in *Cotto Torres* v. *Delgado*, Habeas Corpus 955, decided March 17, 1961, in which we denied the petition for habeas corpus, which denial was affirmed by the Court of Appeals for the First Circuit, on May 4 of the same year. (*Certiorari denied*, 368 U.S. 944 (1961).) See also, *People* v. *Cotto Torres*, 88 P.R.R. 22 (1963).

■ Appellants also allege that the verdict of the jury should have been unanimous, according to the rule established in *Duncan* v. *Louisiana*, 391 U.S. 145 (1968), which is applicable to Puerto Rico. We disagree, since *Duncan, supra,* does not specifically hold that the applicability, in the United States, of the right to a trial by jury guaranteed by the Sixth Amendment of the Constitution of the United States requires a unanimous verdict. On the contrary, the court in said case, at footnote 30 of the majority opinion stated, referring, among other things, to the fact that in some states the verdict of the jury may not be unanimous that "It seems very unlikely to us that our decision today will require widespread changes in state criminal processes." Anyhow, we need not decide now whether *Duncan, supra,* is applicable

in this jurisdiction since it has a prospective effect, and the trial of this case was held prior to May 28, 1968. *DeStefano* v. *Woods*, 392 U.S. 631 (1968).

2.—Appellants allege that they were deprived of the right to a fair and impartial trial guaranteed by the 5th Amendment of the Constitution of the United States, since the trial judge had a private conference with a juror in the absence of the defendants and their respective attorneys.

The assignment refers to an incident in which juror Ramón H. Ortiz, on the morning of May 28, asked to confer with the trial judge in the latter's office, before the opening of the session of said day "without giving notice thereof to the defense or to the People, and said interview between said juror and Your Honor, took place behind closed doors, *while the other jurors, and the defendants, their attorneys and prosecuting attorneys, already seated in court, waited for the appearance of Your Honor and the aforementioned juror*." (Italics ours.)

Juror Ramón H. Ortiz stated in his sworn statement that he visited the office of Judge Freyre to present a problem in relation to his work, since he had been discharged because he was serving as juror.

In the discussion of said motion Ernesto Ramírez Rubio testified that juror Ortiz had told him that he was having problems in his work in Baldrich Printing Press and that he was going to speak to the judge. Judge Freyre was called to testify and he admitted that on two or three occasions he talked with juror Ortiz in his office in relation to the latter's discharge from his job because he was serving as juror. Judge Freyre testified that as a result of this, he communicated with the representative of the Cooperative Development Administration to request them to suspend any investigation until juror Ortiz terminated his functions as juror, in order that he could be at ease while hearing the evidence of the case, but that he never talked to Ortiz about

the merits of the case. Juror Purcell testified that he never saw juror Ortiz enter or leave Mr. Freyre's office, so that said fact did not influence his verdict. Juror Ramón H. Ortiz, in his testimony in court, said that he entered Mr. Freyre's office to ask him to intervene in order that an investigation being carried out in the place where he worked be postponed until he—Ortiz—terminated with his function as juror. Later he entered again because he had been discharged from his job and he wanted to consult Judge Freyre whether that was lawful.

From the record it does not appear that at the time when appellants allege that the interview took place, no objection was raised by them, although it appears from the record that they were in court, and had knowledge of said interview and *they were waiting for the appearance of the Judge as well as of the aforementioned juror.* Anyhow, it was fully established that the private conference between juror Ortiz and Judge Freyre had nothing to do with the merits of the case and that it related to a personal problem of the juror.

Although it is true that private communications between jurors and third persons, or witnesses, or the officer in charge are absolutely forbidden and invalidate the verdict, it is nonetheless true that said rule is not applicable when from the circumstances it appears, as in this case, that the communication between juror Ortiz and the trial judge referred to a personal matter of the former which was not related to any aspect of the case so that it could not prejudice appellants. *Mattox* v. *United States*, 146 U.S. 140 (1892); *United States* v. *Compagna*, 146 F.2d 524, 528 (2d Cir. 1944). In *United States* v. *Woodner*, 317 F.2d 649–652 (2d Cir. 1963), it was stated that a private conference between two jurors and the trial judge did not justify the presumption that prejudice resulted against defendant in the absence of some plain showing to that effect. See also, *Bacino* v.

*United States*, 316 F.2d 11, 14 (10th Cir. 1963). Although the defense had knowledge of the conference in question, it did not raise any question in relation to it at any time during the trial. In *People* v. *Emmanuelli*, 67 P.R.R. 626, 629 (1947), we said that a defendant should not remain silent when an irregularity of this nature takes place, and subsequently, after the case is closed, assign, on appeal, if convicted, said irregularity as error.

Appellants argue that:

■ 3.—"The verdict and judgment entered against defendants-appellants are void, since the verdict of the jury was the result of coercion exercised on the jurors by the trial judge."

This assignment lacks merit. From the record it appears that when the jury came down the first time at 7:00 p.m.— it had retired to deliberate at 5:05 p.m. on May 29, 1962— it was for the purpose of going "to eat something." They returned at 9:00 p.m. and immediately came down at 12 midnight and informed that they had not reached a verdict. After the judge suggested that they could go have a rest and come back the next day to deliberate, several jurors expressed their desire to continue deliberating during the night. The judge then, in view of the late hour sent coffee and sandwiches to them. At 2:07 a.m. they again came down and informed the court that they were deadlocked. It was at this time that Judge Freyre indicated to them, in synthesis, that it was a difficult case; that the defendants as well as society were entitled to the decision of the case. He made it clear to them that that was incumbent on the jury and that they had to decide it "according to their best understanding of the evidence and that the case must be decided only on the evidence." One of the jurors had doubt as to some circumstantial evidence, and asked for instructions on the matter, to which the judge consented. He indicated that he was going to permit them to go to bed and

continue deliberating the next day because he understood that this was a difficult case which required additional effort on the part of the jury to reach an agreement, *no matter what the agreement was.*

At that moment an objection was raised by appellant Maldonado Dipiní understanding that what the judge said could be interpreted by the jury in the sense "that until a verdict is returned one way or the other, they shall not be excused by Your Honor."

Next day—May 30, 1962—at 10:20 a.m. the jury returned from the hotel and went immediately to deliberate. They returned at 12:32 p.m. and reported they were deadlocked. The judge persisted in his position that additional effort was required and proceeded to send them to take lunch. Juror Purcell made certain contentions, but the judge answered that it was not a question of accommodating, but of responsibility. He repeated again that the State as well as the defendants were entitled to the decision of the case; the defendants, because they were under the torture of being submitted to a prosecution, and the State, because it was incurring great expenses; it was a question of harmonizing opinions; of deciding on the basis of the evidence whether they were going to acquit them because they did not commit the offense, or whether they believed the contrary. That was exclusively their own decision.

At 1:45 p.m. they returned from lunch and went to the jury room. At 3:20 p.m. they returned asking for paper and pencil and went back again. Finally, at 6:50 p.m. they returned to the courtroom and informed having reached a verdict of guilty for two of the defendants and one of not guilty for defendant Luis M. Cestau.

From the foregoing it appears that the jury returned the verdict 5 hours and 5 minutes after the last admonition of the judge. It is reasonable to infer that said verdict was not incited by the judge's admonition. In the case cited by

appellants, *Jenkins* v. *United States*, 380 U.S. 445 (1965), it may be noted that two hours after the jury retired to deliberate, the jury sent a note to the trial judge advising that it had been unable to agree upon a verdict *because of insufficient evidence.* The judge stated to them in the courtroom that they had to reach a decision. It was decided that under the circumstances of said case, the statement of the judge was coercive. But said pronouncement is not applicable to the case at bar where the trial judge at no time indicated to the jurors that they had to reach a verdict nor do his statements have the scope attributed by appellants.

■ At the hearing held to argue the motion for new trial all the jurors testified to the effect that they were not urged or coerced by Judge Freyre's statements and that their verdict was based on the evidence offered at the trial, which is confirmed by the fact that said verdict was not produced immediately after the last admonition of the trial judge, but 5 hours later. Anyway, the period for which the jury is to be kept together is in the discretion of the trial judge. *United States* v. *Minieri*, 303 F.2d 550, 556 (2d Cir. 1962). In *United States* v. *Olweiss*, 138 F.2d 798, 800–801 (2d Cir. 1943), *certiorari denied*, 321 U.S. 744 (1944), the jury returned after two hours' deliberation and announced that the jury was hopelessly divided and that they could not possibly come to an agreement. It was decided that there was no coercion in the following instruction when the judge commanded them to continue deliberating: "You may also have all day tomorrow and the next day if you want it." In *Devault* v. *United States*, 338 F.2d 179, 182 (10th Cir. 1964), the Court upheld the position of the judge who allowed the jury to deliberate for thirteen hours. Said case was based on *Mills* v. *Tinsley*, 314 F.2d 311 (10th Cir. 1963), *certiorari denied*, 374 U.S. 847 (1963) in which it was held that the judge did not abuse his discretion in keeping the jury together for deliberation during 31 hours in spite of being

advised by the jury for a second time that it was deadlocked, and on both occasions the judge asked them to continue in deliberation after giving instructions as in "Allen."[1]

In *Mills, supra,* the Court said that:

"The jury cannot determine the length of its deliberations, since, . . . that is the function of the trial judge in the exercise of sound judicial discretion. It is not unusual for a jury to advise the court that it is deadlocked and to thereafter agree and return a verdict. . . . Experience . . . demonstrates that jurors are not always the best judges of whether or not they are able to reach a verdict. In most cases for twelve human minds [or nine in cases of majority verdict as it is in Puerto Rico] to agree, it takes careful consideration of the law and the evidence in the case and after that, discussion among the jurors of their views of the case. It is this kind of serious deliberation that is contemplated in our jury system. An experienced trial judge, in most cases, should be able to tell whether a jury has given its best consideration to the case. Therefore, the law imposes upon the trial judge judicial discretion to determine when the jury is deadlocked and unable to reach a verdict."

See, also, *People* v. *Berdecia,* 59 P.R.R. 317 (1941); *United States* v. *Di Pietto,* 396 F.2d 283 (7th Cir. 1968); and *Commonwealth* v. *Ross,* 152 A.2d 788 (Penn. 1959).

Appellants' fourth assignment is the following:

4.—"That the trial court erred in denying the motion in arrest of judgment filed by the defense—grounded on publicity prejudicial to appellant—thus violating his constitutional right to a fair trial before an impartial jury."

This assignment is based on the fact that (1) about six days prior to the date set for the hearing of the case, that is, April 24, 1962, the newspaper "El Imparcial" published "A Teamster and Owner of a Club is Accused of the Murder of Jayuya." In the text of said information it was stated that Gabriel Maldonado Dipiní, alias "Willy" was arrested and

---

[1] *Allen* v. *United States,* 164 U.S. 492 (1896).

accused of murder in the first degree, illegal bearing and possession of weapons. It was also stated that he had several cases pending in the courts of justice. (2) The edition of April 28, 1962 informed that the prosecuting attorneys and the police officers "were diligently acting . . . trying to finish the last details of the record which served as basis for the arrest of Gabriel Maldonado Dipiní known as 'Willy Motto' . . . in the case of Jayuya." (3) The newspapers "San Juan Star," "El Mundo" and "Island Times," also published articles in relation to appellants and said articles were introduced in evidence.

The publicity in this case is not the massive, pervasive, and prejudicial publicity which virtually converted the trial in *Sheppard* v. *Maxwell*, 384 U.S. 333 (1966) into a circus, and which justified the reversal of the judgment in said case. They did not repeatedly televise the examination in jail by the sheriff during which petitioner admitted having perpetrated a bank robbery, a kidnapping, and a murder, and all this notwithstanding, a motion for change of venue was denied, action which gave rise to the reversal of the judgment in *Rideau* v. *Louisiana*, 373 U.S. 723 (1963). Nor did it happen here as in *Estes* v. *Texas*, 381 U.S. 532 (1965), where the reversal of the judgment on the ground of the absence of the due process of law was based on the following facts . . . (1) massive pretrial publicity had been given to the case; (2) a motion to prevent telecasting, radio broadcasting and news photography was denied; (3) the hearing of said motion was conducted in the presence of prospective witnesses and jurors; was carried live on television and radio, and news photography was permitted; (4) the original jury panel, the trial judge, petitioner, and counsel were highly publicized; (5) four of the jurors had heard all or part of the broadcasts; (6) the State's opening and closing arguments were carried live with sound as were the return of the jury's verdict and its reception by the judge; and (7)

videotapes without sound of the whole proceeding were permitted.

In the case at bar the publicity was in the sense that defendant had been arrested as a suspect of the murder of Jayuya. This was published a week prior to the trial and appellants had ample opportunity to examine the jury who was going to sit at the trial. Although we do not have the benefit of a transcript of the incidents of the "voir dire," however, in the discussion of the motion for new trial the jurors testified that they had not been influenced by any matter foreign to the merits of the case. All of them stated that their verdict was the result, only and exclusively, of their examination of the evidence presented. As in the case at bar, the sole fact of the publicity does not constitute a showing of prejudice, in the absence of evidence that actually the jury was biased or prejudiced as a result of the publicity. *Beck* v. *Washington*, 369 U.S. 541 (1962). In *Rideau, supra,* it was established that the burden of showing affirmatively that he has been deprived, by such publicity, of his right to an impartial tribunal must be sustained by defendant. In the case at bar no evidence whatsoever was produced as to such prejudice. Here the impanelling of the jury took two complete days. The trial judge did not abuse its discretion by his denial of the continuance of the case. See, also, *United States* v. *Medlin*, 353 F.2d 789 (6th Cir. 1965). The certiorari requested in this case from the Supreme Court of the United States was denied on the same day the case of *Sheppard, supra,* was decided, June 6, 1966, 384 U.S. 973. A motion for reconsideration was also denied on October 10, 1966, 385 U.S. 889.

Appellant insistently calls our attention to certain comments we made concerning adverse publicity in *People* v. *Dumas*, 82 P.R.R. 402, 451 (1961), although he admits that the circumstances in said case were quite different from those in the case at bar. Not only were the circumstances

in said case different but also in this case there were other circumstances which justified the conclusion that the publicity in question in no manner whatsoever influenced the jury's verdict of conviction, such as (a) the fact that the publicity referred to other actions of appellant Maldonado Dipiní having no relation to the offense involved in this case; (b) the prosecution had been successively continued several times since the former trial; (c) the jurors stated that in reaching the verdict of conviction they did not consider or attribute any weight to the publicity in question; and (d) the publicity in question was not the massive, pervasive publicity considered illegal and prejudicial in other cases for being so excessive as to deprive appellants of the "serenity and poise to which they were entitled" or that it created a mental condition in the jurors preventing them to act impartially, circumstance which appellants had to establish, and they did not do it.

Therefore, we conclude that the trial court did not err in denying the motion for continuance in question.

5.—Appellants alleged that the trial court erred by impairing appellants' right to an impartial trial, in failing to voluntarily disqualify Judge Freyre Montero. Furthermore, that Judge Carreira Más erred in denying the motion to disqualify filed by defendant Maldonado Dipiní; that in any event, the court committed an error prejudicial to appellant in permitting that said motion be discussed at the commencement of the hearing of the case, on the day it was set, in the presence of the prospective jury.

This assignment is based on the fact that the previous week the trial judge had determined probable cause against appellant Maldonado Dipiní and other persons for the offense of burglary in the first degree and because he intervened in a case of attempt to kill.

On the date of said trials Rule 63 of the Rules of Civil Procedure governed the disqualification of judges. Rule

63.1(a) provided that "A judge, on his own initiative or on motion of a party, shall not act as such in an action or proceeding in any of the following cases: (a) When he is interested in its outcome or is prejudiced or partial to any of the parties or his attorneys."

Under the aforementioned Rule such prejudice or partiality must be *personal* and not *judicial*. Personal bias means an attitude of extrajudicial origin, and the fact that the judge had intervened in different previous cases against the same defendants or against one of them is not sufficient to show said personal bias. *Lyons* v. *United States,* 325 F.2d 370, 376 (9th Cir. 1963), *certiorari denied,* 377 U.S. 969 (1964); *Peters* v. *Jamieson,* 397 P.2d 575 (Hawaii 1964); *Barnes* v. *United States,* 241 F.2d 252 (9th Cir. 1956).

The circumstances which prevailed in *People* v. *Toro,* 84 P.R.R. 473 (1962), where we decided that a judge who makes the investigation of a case, examines the witnesses, and determines probable cause, should not be the trial judge, were not present in this case. In the case at bar Judge Freyre had intervened in two cases against appellant Maldonado Dipiní, which cases were completely different from that of robbery; also, he had determined probable cause in a case of burglary, different from the one at bar. In the present case it does not appear that Judge Freyre had been previously acquainted in any manner whatsoever with the evidence of the offense of robbery charged against appellants.

The fact that the motion for disqualification was argued the same day of the trial, and in the presence of the prospective jury, was not prejudicial to appellants in view of the fact that said motion was filed at the same time the case was called for trial and the defense did not use the proper remedies to prevent that the prospective jury be present at the discussion of said motion.

6.—Our attention is called to the alleged error that the jury's verdict of guilty by a 9 to 3 vote in appellants' case,

and that of not guilty by the same vote in the case of Cestau, were verdicts through compromise.

■ Appellants allege that the evidence showed that Cestau Moreno was the only one of the three assailants who was not wearing a mask, and nevertheless he was the only one the jury found not guilty. Therefore, they conclude that the verdict was through compromise. There is not, in the record, the least scintilla of evidence that the verdict returned was obtained through compromise.

The truth is that Narciso Félix Rivera and Petra Vélez Silva, the only eyewitnesses of the facts, could not identify Luis Cestau Moreno, the third defendant, as the man who was accompanying Maldonado Dipiní and de la Rosa on the day of the facts. However, they fully identified appellants. On the basis of this evidence and the rest which was presented, the jury could conclude, as it did conclude, that Maldonado Dipiní and de la Rosa were guilty of robbery, and that Cestau Moreno should be acquitted. We do not see why such action might be a reason to allege that the verdicts were the result of a compromise. *People* v. *Vélez*, 77 P.R.R. 775 (1955). *Cf. People* v. *Negrón*, 73 P.R.R. 513 (1952). The sixth error was not committed.

■ 7.—Finally appellants maintain that the verdict returned by the jury is contrary to the evidence. In support of said assignment appellants allege, in synthesis, that the identification of appellants as the perpetrators of the theft, by witnesses Petra Vélez Silva and Narciso Félix Rivera, as well as the rest of their testimonies, were not credible because (a) they admitted that one of them covered his face with a towel which he held with one hand and the other had a handkerchief over his nose and mouth; (b) they incurred in numerous contradictions as to how the facts occurred, the time they occurred, and the color of different things such as the vehicle in which the perpetrators of the theft arrived; (c) Mrs. Silva could not identify Cestau Moreno as the third

participant in the theft, although she testified that the third one did not cover his face.

The evidence shows that: (a) Rivera testified that on alighting from the bus he observed that Maldonado Dipiní and Cestau Moreno did not have their faces covered. On direct examination he said that he could not identify the one who was carrying the revolver as appellant de la Rosa, but on cross-examination he testified that he did identify de la Rosa as the one who was bearing the weapon; that the latter covered his face with a towel and Maldonado Dipiní with a handkerchief when they entered the house; (b) Mrs. Vélez testified that she identified Maldonado Dipiní because of his physique and de la Rosa because she saw him uncovered when he entered the house, since he covered his face with the towel after they locked her in a closet from where she could watch (through a slight opening of the closet door) how appellants stole some jewels from her jewel case and how they opened her husband's safe; (c) although it is true that said witnesses incurred several contradictions as to the points indicated by appellants, the jury was justified in believing them notwithstanding said contradictions, since it could consider that it was due to the time elapsed, the many times the witnesses had to repeat their version of the event, and the very human and real circumstance that precisely, when the witnesses of events try to recite them exactly and truthfully, they may vary and contradict themselves as to details and the order of occurrence.

We conclude that there is sufficient evidence in the record to support the verdict returned, and, therefore, the error assigned was not committed. *People* v. *Nicole*, 71 P.R.R. 810 (1950); *People* v. *Millán*, 71 P.R.R. 410 (1950).

In view of the foregoing the judgments rendered against appellants in this case on July 23, 1962 will be affirmed.

Mr. Chief Justice Luis Negrón Fernández did not participate herein.