## 37526. FRENCH v. THE STATE.

TOWNSEND, Judge. 1. (a) Where an indictment charges involuntary manslaughter in the commission of an unlawful act in that the defendant, William French, while driving and operating an automobile on a described public highway and while meeting an automobile traveling in the opposite direction did "cause said automobile which he was then and there driving and operating to crash into, upon and against the automobile being then and there driven and operated by the said Clayton McDuffie," thereby causing injuries to Henry McDuffie, a passenger in the McDuffie automobile, from which he died—the following being alleged as unlawful acts: (1) that the accused unlawfully failed to turn the automobile which he was driving and operating to the right of the center of the highway in order to give the approaching motorist one-half of the traveled portion thereof, and (2) that he did then operate said automobile while under the influence of intoxicating liquors—such indictment is not demurrable as failing to set forth any offense against the laws of this State. Code § 27-701; *Walters v. State,* 90 *Ga. App.* 360 (83 S. E. 2d 48).

(b) The transcript of the record on appeal duly certified by the clerk will control over any other statement or extract therefrom as to what is the true record in the case. *Georgia S. & F. Ry. Co. v. Pritchard,* 123 *Ga.* 320(1) (51 S. E. 424). There was accordingly no error in overruling a demurrer to the indictment on the ground that it contained certain unintelligible matter, when the indictment, as set out in the certified transcript of the record, shows no such defect.

(c) Under the clear allegations of the indictment the defendant

was operating his automobile at the time of the collision. The special demurrers seeking to attack the indictment on the ground that it does not show whether the defendant's automobile was in operation or stationary at the time of impact are accordingly without merit.

2. Whether a person is alive or dead at the time he is examined by a witness is ordinarily matter of fact and not of opinion. Accordingly, testimony that the deceased was pulled out from under the overturned automobile, that his "skull was bursted open right up there on top of his head," and that he was dead, was sufficient to establish this fact, although the witnesses who testified were not experts. See *Travelers Ins. Co.* v. *Sheppard*, 85 *Ga.* 751 (8) (12 S. E. 18) ; *Georgia Ry. & Elec. Co.* v. *Gilleland*, 133 *Ga.* 621 (3) (66 S. E. 944). No objection was interposed to any of this evidence on the ground that the witnesses were attempting to testify, without a foundation being first laid, as to the proximate cause of death. Special ground 1 of the amended motion for new trial, which contends that there was no competent evidence in the record as to the cause of death, is without merit.

3. Driving while under the influence of intoxicants is a penal offense under Code (Ann.) § 68-1625. One who, while so violating the law, drives so dangerously or recklessly, that as a result of his intoxication he unintentionally kills another human being is guilty of involuntary manslaughter in the commission of an unlawful act. *Herrington* v. *State*, 31 *Ga. App.* 167 (2b) (120 S. E. 554). It is therefore not true, as contended in the second special ground of the motion for new trial, that it is necessary to prove that the defendant, if he was drunk and if as a result of his drunken driving he killed another, must also have been guilty of violating some other traffic law before a conviction will lie. The charge excepted to instructed the jury that the defendant was charged with running over and killing the decedent while committing two unlawful acts, proof of either of which, if it proximately resulted in death, would support a conviction. This charge was without error.

4. "Before the refusal of a written request to charge the jury will be held to constitute error, it must appear that the request was in itself a correct statement of the law and applicable to the case." *Green* v. *State*, 124 *Ga.* 343 (8) (52 S. E. 431). The requests to charge embodied in special grounds 3, 4 and

5, the refusal of which is assigned as error, all contain material inaccuracies. It would have been error to charge that if the speed of the approaching vehicle were 50 to 55 miles per hour the driver of that car would be in violation of the law, the speed limit at the time and place in question being 60 miles per hour. Since there was no evidence suggesting that the collision occurred in a congested business or residential section, a charge relating to speed in such sections would likewise be inapplicable. And a charge instructing the jury that "you are not to conclude" from the circumstance of there being a white or yellow line in the center of the road that the defendant had no right to cross over it, without limiting such a charge to applicable circumstances, would likewise be error as an instruction to the jury to disregard markings placed upon the highway. None of these grounds show reversible error.

5. It is contended in special ground 7 that the verdict and judgment in this case are void because "the arresting officer, Trooper C. R. Floyd, never took movant before a magistrate" and that "any subsequent appearance before a magistrate for the purpose of a commitment hearing and to receive bond provided for in Code § 27-210 does not satisfy the requirements of Code § 27-212 which require the presence of both the arresting officer and the arrested before said warrant-issuing officer." Code (Ann.) § 27-212 provides: "In every case of an arrest without a warrant the person arresting shall without delay convey the offender before the most convenient officer authorized to receive an affidavit and issue a warrant. No such imprisonment shall be legal beyond a reasonable time allowed for this purpose and any person who is not conveyed before such officer within 48 hours shall be released." It is a general rule that, although an arresting officer may be liable in damages for false arrest and imprisonment where he detains the defendant in an illegal manner, this is ordinarily immaterial so far as the jurisdiction of the court over the defendant is concerned, after it has been acquired by accusation or indictment, and appearance and pleading by the defendant, in a criminal case. *Joiner* v. *State*, 66 *Ga. App.* 106 (17 S. E. 2d 101). It may be inferred from the allegations of this special ground that the defendant appeared and pleaded not guilty to the indictment without raising any question as to the jurisdiction of the court; also that he did in fact have a commitment hearing and did request and obtain bond; also

that these things occurred within 48 hours after his arrest, there being no allegation to the contrary. The movant complains only that he was not taken before a magistrate *by the person arresting him*, which act he says is sufficient to void the conviction against him, although not raised by him until after he suffered the adverse verdict. This contention is without merit.

6. Special ground 6, complaining that the court erred in failing to charge the law relating to involuntary manslaughter in the commission of a lawful act, is considered in connection with the general grounds. The evidence on the trial of the case authorized the jury to find that the defendant was proceeding slowly down the highway; that he was in a drunken condition and his judgment was impaired thereby; that he noticed his gas gauge was showing "empty" and decided to turn left across the highway into a filling station; that the McDuffie car, approaching from the opposite direction at a lawful rate of speed on its right side of the road, rounded a gentle curve and the driver saw the defendant approaching slowly on his right side of the road, and that the defendant then cut to the left and into McDuffie's lane of traffic; that McDuffie attempted to apply his brakes and swerve to the right but the defendant's car was over three feet into his lane of traffic and he was unable to avoid hitting him; that the defendant appeared drunk to him; that arresting officers arriving within a half hour found him in an extremely drunken condition in which he remained for several hours thereafter, and that immediately after the collision the deceased was extricated from under the overturned McDuffie vehicle and found to be dead with his skull crushed. That the evidence is amply sufficient to support the conviction, see *Jordan* v. *State,* 68 *Ga. App.* 139 (22 S. E. 2d 194). Since the issue of manslaughter in the commission of a lawful act without due caution and circumspection was raised neither by the evidence nor by inferences reasonably to be drawn therefrom, the court did not err in failing to charge on this degree of homicide. *Guthrie* v. *State,* 92 *Ga. App.* 62 (87 S. E. 2d 648); *Stone* v. *State,* 78 *Ga. App.* 555, 556 (51 S. E. 2d 578). While one has the right to turn to the left across a public highway and into a private drive (Code, Ann., § 68-1633(b)) this does not give one the lawful right to turn into the lane of traffic of an approaching vehicle, an act prohibited under Code (Ann.) § 68-1634, nor

does testimony regarding such an act create an inference from evidence which would authorize a charge on the offense of involuntary manslaughter in the commission of a lawful act, which probably might produce such a consequence, in an unlawful manner under Code § 26-1009. These grounds are without merit.

The trial court did not err in overruling the demurrers to the indictment and denying the motion for new trial as amended.

*Judgment affirmed. Carlisle, J., concurs. Gardner, P. J., concurs specially.*

DECIDED FEBRUARY 6, 1959—REHEARING DENIED
FEBRUARY 20, 1959.

*D. Lee Churchwell,* for plaintiff in error.

*Wm. M. West, Solicitor-General, Hal Bell, Assistant Solicitor-General,* contra.

GARDNER, Presiding Judge, concurring specially. I am concurring specially because it is my opinion that in a case such as this the evidence should be set out substantially so that the bench and bar may derive benefit therefrom so as to guide them in future cases. The record shows that the defendant, William French, was charged with involuntary manslaughter in the commission of an unlawful act on an indictment which charges the defendant with the offense of driving and operating an automobile on a public highway in such a manner as to cause injuries resulting in death to be inflicted upon Henry Grady McDuffie who was riding as a passenger in another car with which the defendant's car collided. The indictment alleges that the defendant was driving under the influence of intoxicating liquors.

The defendant, before pleading to the merits of the case, filed general and special demurrers. The court overruled the demurrers and the case proceeded to trial. The jury returned a verdict of guilty and the judge sentenced the defendant to not less than four and not more than five years in the penitentiary.

The defendant filed a motion for a new trial based on the statutory grounds and thereafter added 7 special grounds. The court denied the motion, and it is on this judgment, as well as

on the judgment overruling the demurrers, that the case is here for review.

The evidence shows substantially: Clayton McDuffie testified that at about 12 noon, December 21, 1957, he, with his son as a passenger, was driving his 1952 Ford automobile in a northerly direction towards Warner Robins, Georgia, on Highway 247, when he met the defendant approaching from the opposite direction; that just before the two automobiles met, the defendant's automobile crossed the center line of the highway onto the left side of the road and crashed into witness' car causing it to turn over and come to rest with its wheels up; that the passenger was thrown from the automobile and killed more or less instantly as the automobile turned over on him; that as the witness approached the scene of the collision he was driving 50 to 55 miles per hour; that he could not estimate the speed of the defendant's car but observed him as he began to cross the center line at which time witness applied his brakes and turned to the right but could not avoid the collision; that the collision occurred at a point south of the City of Warner Robins and at a point north of a grade and a slight curve in the highway; that there were no other vehicles on the highway at or near the scene of the collision nor was there a "slow" sign on the highway near the scene.

State Trooper Floyd testified that he arrived on the scene of the accident at about 12:30 p.m. and gave a description of the scene which tended to substantiate the testimony given by the witness McDuffie and further testified that the defendant had a strong odor of alcohol on his breath, his eyes were bloodshot, he spoke incoherently and he staggered when he walked; that the defendant was definitely under the influence of alcohol to a substantial extent; that he observed the defendant two or three hours later at the Warner Robins jail and he was still heavily under the influence; that the defendant first denied that he had been drinking but later admitted it; that the witness arrested the defendant for driving under the influence and three other charges and turned him over to the authorities at the Warner Robins jail; that the witness did not carry the defendant before a magistrate; that the defendant gave the witness the name of

Walter French and presented a driver's license bearing that name. Under cross-examination the same witness testified that it was his opinion that an automobile which was traveling 40 miles per hour could do the damage that he observed to the automobiles; that in his opinion the Ford automobile was being driven at 60 miles per hour which was the legal rate of speed at the time and place surrounding the collision.

Deputy Sheriff Keene testified substantially the same as Trooper Floyd as to the condition of the defendant at the scene of the collision and then two or three hours later at the jail, and also as to the name and driver's license of Walter French given by the defendant, William French.

County Sheriff Chapman testified that between 3 and 4 p.m. on December 21, 1957, he took charge of the defendant at the Warner Robins jail and carried him to the Perry jail; that the defendant was drunk at that time and contended that his name was Walter French; that he did not take the defendant before a magistrate at that time because he does not usually carry a drunk man before a magistrate.

Ida Mae French, wife of the defendant, testified that she was with her husband all of the morning of December 21, 1957, until about twenty or twenty-five minutes before the collision, and that he was sober and had not had a drink at all before he left her; that she saw him about twenty-five minutes after the wreck and he was at that time still sober.

Claude Tucker, an eyewitness to the collision, testified that he observed both vehicles on the road approaching each other; that he observed the defendant turn across the center line and the cars hit; that he could not judge the speed, but the defendant's car appeared to be slowing as if to turn into the filling station; that he did not get close to the defendant, did not smell his breath and did not know whether or not he was drinking; and that the witness McDuffie was not trying to pass another automobile before the collision.

Joe Jackson testified that he was a friend of the defendant and arrived on the scene after the collision; that the defendant did not seem to be drunk; that he did not notice the defendant staggering or being bleary eyed; that the witness did not know

whether the defendant was drinking or not; that he looked like he might not have been drinking. This same witness stated that he was the same Joe Jackson who had pleaded guilty to the offense of sodomy in Houston Superior Court and was sentenced to the penitentiary.

Mrs. Mattie J. Watson stipulated through defendant's counsel that she collected rent from the defendant on the morning of December 21, 1957, between 9:30 a.m. and 11 a.m. and that she did not smell whisky on him; that if he was drinking at that time she did not know it.

The defendant, in his unsworn statement, described the collision, stating that he had noticed his gas register and decided he needed gas and had stopped his car when he saw the McDuffie car coming down the road at about 65 or 70 miles per hour like he was coming around the car but couldn't make it back on his side of the road and hit the defendant's car. "I was standing still, that is all, he was down there traveling that highway at a speed of about 65 or 70 miles an hour. I wasn't drunk."

I agree in the main with what my colleagues have said in regard to the rulings on the points involved in this case. However I wrote the case originally somewhat more in detail, whereupon Judge Townsend and Judge Carlisle specially concurred, which resulted in that opinion becoming the main opinion and my opinion the special concurrence. For that reason and that reason alone I have reduced my special concurrence to comply with the statements made in the majority opinion and agree to what my colleagues have said.