40581.   DUKES v. THE STATE.

DECIDED JUNE 15, 1964.

*Al Jennings,* for plaintiff in error.

*Jack J. Gautier, Solicitor General, Fred M. Hasty, Assistant Solicitor General,* contra.

RUSSELL, Judge. ■ The first special ground of the motion for a new trial complains of the violation of *Code Ann.* § 27-212 which requires that any person not conveyed before a person authorized to issue a warrant within 48 hours shall be released, and no imprisonment shall be legal beyond a reasonable time allowed for this purpose. What is a reasonable time is a question of fact and it may well be less than 48 hours, the statutory outer limit of reasonableness. The uncontradicted evidence here is that the defendant was arrested without a warrant at about 4:30 p.m. on the afternoon of April 8, 1963, taken to the police station and booked "Loiter and hold" (described in the testimony as an investigative procedure) and from there to the city stockade. All personnel at the stockade had blanket instructions not to let persons so booked confer with anybody until the detectives were "through with them." The defendant was permitted to attempt one telephone call which failed because there was no answer. Thereafter she asked that her lawyer be sent for and the request was refused. The attorney in question, apparently contacted by the family, came to the stockade to see her and was

refused admittance. No warrant for her arrest was ever taken out, and she was never taken before a committing magistrate. One week later, on April 15, she was released on habeas corpus. Several weeks afterward she was indicted by the grand jury.

On the same day that the Supreme Court published its opinion in Mapp v. Ohio, 367 U. S. 643 (81 SC 1684, 6 LE2d 1081) holding that the right to be protected from illegal searches and seizures embodied in the Fourth Amendment of the Bill of Rights should be channeled through the Fourteenth Amendment so as to protect defendants in State courts from the use of evidence against them thus unlawfully obtained, that court also published Culombe v. Connecticut, 367 U. S. 568 (81 SC 1860, 6 LE2d 1037) in which it was held that the due process clause of the Fourteenth Amendment could be directly invoked to suppress a confession as involuntary where no crude coercive methods were evident, no physical deprivation was practiced, questioning was not prolonged beyond physical endurance, nor any open trickery or third degree resorted to, but where illegal prolonged detention combined with lack of mental acuity to bring about the desired end. Culombe was detained a substantial portion of five days before the confession was obtained. It was held: "The very duration of such detention distinguishes this case from those in which we have found to be voluntary confessions given after several hours questioning or less on the day of arrest. . . [When] interrogation of a prisoner is so long continued, with such a purpose and under such circumstances, as to make the whole proceeding an effective instrument for extorting an unwilling admission of guilt, due process precludes the use of the confession thus obtained. Under our accusatorial system, such an exploitation of interrogation, whatever its usefulness, is not a permissible substitute for judicial trial." The same opinion points out that the systematic exclusion by Federal courts of confessions obtained during periods of illegal detention was an innovation which derived from concern and responsibility for fair modes of criminal proceeding in the Federal courts originating in McNabb v. United States, 318 U. S. 332 (63 SC 608, 87 LE 819) (counsel for the defendants in that case later served as a judge of this court) and has been followed by no State court to date except

Michigan (People v. Hamilton, 359 Mich. 410, 102 NW2d 738). The question was touched in passing in *Childers v. State,* 100 Ga. App. 250, 253 (110 SE2d 703) where this court stated: "Even if, as contended by counsel for the defendant, the defendant had been held 'incommunicado' for four days, it does not appear from the evidence that the written statement or confession was given by the defendant and signed by him during that four-day period, or that the defendant was deprived of any of his rights in immediate connection with the giving of the confession." In *Pistor v. State,* 219 Ga. 161, 165 (132 SE2d 183) the court said: "The fact that the alleged confession was made before a warrant had been executed does not render it inadmissible on the ground that it was made while the defendant was illegally detained. . . The fact that the alleged confession was made before the warrant was issued and was made in the absence of advice of counsel does not demand a finding that the statement of the defendant was not freely and voluntarily given. Such factors were circumstances to be considered by the jury in determining the question."

Culombe excoriates the practice, followed here, of booking a defendant for some inconsequential misdemeanor or ordinance violation merely as a colorable device in connection with investigative procedure. The illegal detention under such circumstances constitutes a flagrant violation of law by the very persons sworn to uphold it, and renders the entire procedure from the arrest a trespass ab initio. *Piedmont Hotel Co. v. Henderson,* 9 Ga. App. 672 (6) (72 SE 51). It can never be condoned. "[L]ong detention, while the prisoner is shut off from the outside world, is a recurring practice in this country—for those of lowly birth, for those without friends or status. We also know that detention incommunicado was the secret of the inquisition and is the secret of successful interrogation in Communist countries." Douglas, J., concurring in Reck v. Pate, 367 U. S. 433, 446 (81 SC 1541, 6 LE2d 948). The sinister overtones of a practice having these connotations cannot be ignored by those pledged to the administration of justice, and the time may well be near when courts will hold not only that evidence obtained by illegal search is an unconstitutional denial of due process to be in

effect "punished" by suppression of the evidence, but that confessions obtained by illegal deprivation of liberty require imposition of like sanctions. It is, however, only the period between the arrest and the confession which is crucial, so far as a determination of the admissibility of the confession is concerned. This defendant made no admissions except those immediately coincident with her arrest. In this case, the statements were not inadmissible and the illegal detention cannot be made the basis of a new trial. "A motion for a new trial goes only to the verdict, and reaches only such errors of law and fact as contributed to the rendition of the verdict." *Ray v. Wood,* 93 Ga. App. 763 (1) (92 SE2d 820). Jurisdiction of the court is not affected by the fact that the detention is illegal. *French v. State,* 99 Ga. App. 149 (5) (107 SE2d 890); *Joiner v. State,* 66 Ga. App. 106 (17 SE2d 101). In like manner, the investigation by police officers at the scene on their arrival, and the defendant's statements to them, not being tainted by the overtones of coercion incident to prolonged illegal detention, are not objectionable because she did not at that time have counsel. See *Blake v. State,* 109 Ga. App. 636 (137 SE2d 49). The first special ground is without merit.

■ Error to be reversible must be harmful. *Owens v. Service Fire Ins. Co.,* 90 Ga. App. 553 (83 SE2d 249). Special ground 2 of the amended motion for a new trial has been specifically abandoned. The remaining special grounds, all of which complain of the ruling of the trial court unduly restricting the unsworn statement of the defendant, fail to show what the defendant's answers would have been to questions propounded to her by her counsel and thus fail to show that the answers, if allowed to be made, would have been relevant or favorable to her position. The grounds therefore are too incomplete for consideration.

The trial court did not err in overruling the motion for a new trial.

*Judgment affirmed. Nichols, P. J., and Hall, J., concur. Hall, J., concurs specially in Division 2 of the opinion.*

HALL, Judge, concurring specially in Division 2. While I concur with the holding in Division 2, I am of the opinion that under the current status of our law an accused has no constitu-

tional right to demand that he be "questioned by his counsel to elicit his unsworn statement to the court and jury in his defense." Language to the contrary is found in three recent decisions of this court, *Shoffeitt v. State,* 107 Ga. App. 217, 218 (129 SE2d 572), *Middlebrooks v. State,* 107 Ga. App. 587 (130 SE2d 798), *Lovett v. State,* 108 Ga. App. 478 (133 SE2d 595), but a review of the opinion of the Supreme Court of the United States in Ferguson v. Georgia, 365 U.S. 570 (81 SC 756, 5 LE2d 783) convinces me that no such right exists today under the current Georgia law. The *Middlebrooks* and *Lovett* cases rely upon *Shoffeitt* and Ferguson for their holding. The *Shoffeitt* case assumed without deciding that the holding in the Ferguson case was applicable to *Code* § 38-415 even though the legislature had repealed and re-enacted it and had repealed the incompetency provision of *Code* § 38-416. The specific holding of the *Shoffeitt* case went to the question whether an accused, who makes an unsworn statement, can be compelled to answer questions on cross examination. 26 Ga. Bar J. 224-228.

In Ferguson v. Georgia, 365 U.S. 570, supra, error was assigned only on the failure of the trial court to allow the defendant's counsel to ask him questions during his unsworn statement. The Supreme Court of the United States stated in the beginning of its opinion that its decision necessarily involved consideration of *Code Ann.* § 38-416, the incompetency statute, as well as *Code Ann.* § 38-415, the unsworn statement statute. "The court devoted well over half of its decision to a discussion of the history of the incompetency rule and its gradual demise everywhere in the common law world except Georgia." 47 American Bar J. 727, 728. Its narrow ruling was as follows: "We therefore hold that, in effectuating the provisions of [*Code*] § 38-415, Georgia, consistently with the Fourteenth Amendment, could not, *in the context of Code § 38-416,* deny appellant the right to have his counsel question him to elicit his statement. *We decide no more than this.*" (Emphasis supplied). One cannot read any mandate from this holding that, taken out of context with *Code Ann.* § 38-416, an accused has a right to have his counsel question him to elicit his unsworn statement. As Justice Frankfurter pointed out in his concurring opinion, "Standing alone, § 38-415

raised no constitutional difficulty. Only when considered in the context of the incompetency provision does it take on meaning. . . . Considered *in vacuo*, § 38-415 fails, as has been pointed out, to present any reasonable doubts as to its constitutionality, for it provides only an additional right." Ferguson v. Georgia, supra, 599, 600. "The court's rationale was based upon the existence of the incompetency rule which denied the accused the right to make a sworn statement." 24 Ga. Bar J. 448, 450.

In 1962 the legislature enacted a new law to replace *Code Ann.* §§ 38-415 and 38-416. Ga. L. 1962, p. 133. It repealed the incompetency rule of *Code Ann.* § 38-416 and gave a defendant the right to be sworn as a witness and be subjected to direct and cross examination like any other witness, and it also preserved the right to use the unsworn statement. While the statutory right to the unsworn statement remains the same as under the former law, the aid of counsel to question the defendant to elicit the unsworn statement is no longer required to afford the defendant due process under the Fourteenth Amendment. The defendant, now able to be sworn and have counsel examine him, has the same rights that exist in every State of the Union and in the Federal courts. In Georgia a defendant who does testify as a witness has greater protection than in the Federal courts by virtue of the fact that his general character cannot be assailed unless he first actually puts it in issue. *Code Ann.* § 38-415; 14 Mercer L. R. 42, 47. The right to make an unsworn statement is merely "an additional right," not required by the Federal Constitution as essential to a fair trial. Thus the present Georgia law gives the defendant when sworn as a witness the same and even greater rights than do other American jurisdictions, and gives the defendant the additional or alternative right to make any unsworn statement he deems proper for his defense without the aid of counsel to elicit the statement. How can it possibly be said that the giving of this additional or alternative right violates the fundamental principles of liberty and justice guaranteed by the Fourteenth Amendment? In some cases counsel may consider it advantageous for the defendant to waive his right to be examined by counsel as a witness and to elect to make an unsworn statement, thereby depriving the State of the

opportunity of cross examination. I believe that following the 1962 Act (Ga. L. 1962, p. 133) the law now is as enunciated by the Georgia Supreme Court before Ferguson v. Georgia, 365 U.S. 570, supra: "The right to make a statement in his behalf is a personal right granted to the defendant by *Code* § 38-415, [currently Ga. L. 1962, p. 133] and extends no further than to permit him personally to make to the court and jury just such statement as he deems proper in his defense. His counsel has no right to ask him questions while he is making a statement. The trial judge, however, in his discretion, can permit his counsel to ask him questions or make suggestions to him relating to his statement, while he is making it or when he has concluded it." *Corbin v. State,* 212 Ga. 231, 232-233 (91 SE2d 764).