Marvin **ROBERTS**, Appellant,

v.

A. L. **DUTTON**, Warden, Georgia State Prison, Appellee.

No. 23494.

United States Court of Appeals Fifth Circuit.

Nov. 1, 1966.

Casper Rich, Atlanta, Ga., Emmett Calvin, Jr., Dallas, Tex., for appellant.

Arthur K. Bolton, Atty. Gen., Carter A. Setliff, Asst. Atty. Gen., Atlanta, Ga., for appellee.

Before RIVES, BELL and THORN-BERRY, Circuit Judges.

RIVES, Circuit Judge:

This appeal is from the district court's denial of a writ of habeas corpus to a prisoner of the State of Georgia. The application alleged and the answer denied exhaustion of available State remedies.[1] The ground assigned in the application is that Roberts was denied effective representation of counsel for his defense. The same ground had been assigned in a petition for habeas corpus presented to the City Court of Reidsville, Georgia. The Judge of that Court granted the petition upon a finding that Roberts' counsel declined to appeal from the judgment of conviction, though requested by Roberts to do so. The Supreme Court of Georgia reversed upon a holding that, "Whether it was advisable and to his best interest to seek and obtain a new trial for him was a decision which his attorneys ought to have made and evidently did make for their illiterate client."[2] On appeal there is no contention that Roberts failed to exhaust his State remedies. To the contrary, the appellee insists that the sole question presented is "whether the evidence supports the lower court's finding that appellant was not denied effective assistance of counsel?" We accept that statement of the issue.

The original record on this appeal did not contain the testimony of the applicant other than his affidavit attesting to the truth of the facts stated in his application. The parties stipulated that no transcript had been made of Roberts' testimony in the district court, but that it was substantially the same as his testimony before the City Court of Reidsville, Georgia, and consented that a transcript of Roberts' testimony in the State court be considered as a part of the record on this appeal. Prior to the oral argument and submission, this Court so ordered.

The hearing in the City Court of Reidsville was held on June 23, 1965. Roberts testified that he was then forty-four years old; that he was arrested in White County, Georgia, and charged with the offense of statutory rape "the first part of July 1951"; that from the time of his arrest until the date of his trial, October 11, 1951, he remained in jail and did not see or talk with any lawyer; that he had no money, no training in law, and only a second grade education; that he had no family or relative able to aid him in obtaining an attorney, and no one offered to assist him; that the sheriff or the sheriff's son brought him to the courthouse on October 11 "around 10:00 or 10:30 in the morning." Continuing, Roberts testified:

"Q. Tell us what happened when you were brought into the Courtroom.

"A. I was brought into the Courtroom, I had a seat and was

---

1. See 28 U.S.C.A. § 2254.

2. Balkcom v. Roberts, 1965, 221 Ga. 339, 144 S.E.2d 524, 525.

there for a few minutes, I was called before the Judge. He read the charge and asked me how I pleaded, guilty or not guilty.

"Q. What did you reply?

"A. I pleaded not guilty.

"Q. Then what happened?

"A. He ask (sic) me if I had an attorney?

"Q. What did you tell him?

"A. I told him no.

"Q. What did he do?

"A. He appointed Mr. Edwards as my attorney.

"Q. Then tell us what happened?

"A. They proceeded with the case at that time.

"Q. Did some other lawyer, other than Mr. Edwards, assist in your case?

"A. He was talking with Mr. Edwards, Mr. Underwood.

"Q. Do you know whether or not either of these gentlemen are still alive?

"A. I do not know personally.

"Q. Did either Mr. Edwards or Mr. Underwood go into the facts of your case with you?

"A. No sir.

"Q. Have either one of these people been to the county jail at any time to see you?

"A. No sir.

"Q. Was this a jury trial or a non-jury trial?

"A. Jury trial.

"Q. Now how long did the trial of this case take?

"A. Actual time I can't say, but from the time I entered the Courtroom until the time I was back in jail I would say approximately one hour and a half."

Roberts further testified that he had no witnesses; that he recalled making a statement to the jury, that prior to mak-ing the statement he did not discuss it with his attorneys.

"Q. Did they counsel with you in any way relative to how you should act, what you should say or what you should cover in your statement?

"A. No sir.

"Q. Were you at any time advised of any of your rights according to the laws of the constitution either of Georgia or the United States?

"A. None whatsoever."

Roberts further testified that after the verdict and before he was taken back to jail, he asked Mr. Edwards to appeal the case but "I got no answer from him." The sheriff then carried him back to jail where he remained from October 11 to November 11. During that time no attorney came to see him or discussed with him any of his rights relative to an appeal. On November 11, he went to the Cherokee County public works camp. He stayed there until January 20, 1952, when he escaped and went to California and from there to Texas, where he was recaptured and returned to prison.

On cross-examination, Roberts testified that he had known "all my life" the two attorneys who were appointed to represent him; that Mr. Edwards was the older and was about eighty years old; that Mr. Underwood "was close to the same"; that both of them had been in that community "as far back as I can remember"; that he did not know how long Mr. Underwood had practiced law, but that Mr. Edwards had either practiced law or been Mayor, or held some political office, as long as he could remember; that though he was convicted in 1951, he was out on escape for a while, and had (on June 23, 1965) served only seven months in prison; that the two attorneys did represent him "the best they knew how."

One of the attorneys, Mr. Edwards, had died before either the State or the federal habeas corpus hearing. The other attorney, Mr. Underwood, testified in

the present case by answers to written interrogatories propounded by the respondent, and was orally cross-examined by applicant's counsel. On direct examination, Mr. Underwood testified that he was admitted to the Bar September 7, 1914, and that he studied law in the office of Charles H. Edwards. In response to the question "to what extent do you practice criminal law," he answered, "General practicing, practiced, represented criminals I was so employed to do through the years." He testified that he assisted in the representation of Marvin Roberts during the October Term 1951; that he and Colonel Charles H. Edwards were appointed by the court; "Colonel Edwards and I went thoroughly into the case with Mr. Roberts of course because it is generally understood that if a man is appointed he had better do his very level best or get criticized, and we did that"; that "Marvin Roberts was intelligent and understood exactly where he was at [sic]"; that "we did not file an appeal in the matter because he requested that we didn't [sic]. He was elated over the fact that he did not receive electrocution." "We advised him thoroughly as to his right of appeal and asked him if he wanted it appealed. Of course, we pointed out to him he might win a new trial and he might get worse and might get electrocuted at the next trial, and he explicitely [sic] asked that we not appeal his case"; that he "assisted Colonel Edwards"; "Colonel Edwards was an outstanding criminal lawyer in North Georgia, considered one of the best. He has been dead for several years. * * * we did the very best we could under the circumstances made and provided."

On cross-examination by applicant's counsel, Mr. Underwood testified that he did not remember how long it took to try the case and was asked "could it be that it started in the morning and finished by dinner time?" He answered: "Might have been; I don't know. We went thoroughly into the matters as we always did, Colonel Edwards and I. I was not his partner at that time; I studied law under him. Partners for 15 years. I wasn't at that time." As to any conference with the accused prior to trial, Mr. Underwood testified:

"Q. Had you prior to the day of this trial discussed Marvin Roberts' case with Marvin Roberts?

"A. No. Colonel Edwards, he lived right across the street from the jail and he went over there and interviewed him.

"Q. You say he did or you did?

"A. He did.

"Q. But you did not?

"A. Because he stated to me he spent about thirty or forty minutes with him going over the case, in jail."

Mr. Underwood further testified that after the trial was over and before Roberts was taken back to jail by the sheriff, "we took him in the back room before—in the jury room before he was taken to the jail and went over it thoroughly about the appeal of the case, if he wanted to." His cross-examination concluded as follows:

"Q. Since you left the Courthouse that time, Mr. Underwood, have you ever seen Marvin Roberts again?

"A. No, sir, I have not.

"Q. Mr. Underwood, do you still practice?

"A. In a way. I don't take any cases in Court; I'm just abstractor and pass on land titles, things of that kind, practice some in the Ordinary's Court. I retired two years ago from active practice."

Roberts and Mr. Underwood were the only two witnesses whose testimony was introduced at the habeas corpus hearing. The only other evidence consisted of four documentary exhibits introduced by the applicant Roberts.

Exhibit 1 is the copy of the indictment returned at the October Term 1951 of the Superior Court of White County, Georgia, of the verdict of the jury, and of the formal sentence by the court.

The indictment charges Marvin Roberts with the offense of rape "for that the said accused on the 1st day of July in the year 1951, in the County aforesaid, did then and there, unlawfully and with force and arms, have carnal knowledge of Barbara Sue Tullis, a female, under fourteen years of age, forcibly and against her will, without having previously become lawfully married to said female." The verdict of the jury is endorsed on the back of the indictment as follows: "We, the jury, find the defendant GUILTY and recommend mercy and fix his sentence at 20 to 20 (Twenty-Twenty) yeras [sic]." The court sentenced Roberts to imprisonment "for the full term of twenty years as a minimum, and twenty years as a maximum."

Exhibit 2 is a copy of the Criminal Docket Sheet of the Superior Court in the case of The State vs. Marvin Roberts charged with the offense of rape, bearing a single further entry, viz: "Verdict of Guilty and Sentence 10/11/51."

Exhibit 3 is a copy of the opinion of the Supreme Court of Georgia reported as Balkcom v. Roberts, September 22, 1965, 221 Ga. 339, 144 S.E.2d 524.

Exhibit 4 is a certified copy of the transcript of testimony on the trial of the criminal case against Roberts. It consists of only 32 letter size pages of double spaced typewritten matter. The following witnesses were introduced by the State: Dr. L. G. Neal, the physician who examined the child; Barbara Sue Tullis, the eight-year-old child; Mrs. Odell Whitley, the mother of the child; and W. L. Allison, the Sheriff of White County. The defendant offered no evidence except the unsworn statement of the defendant himself. Both Mr. Underwood and Mr. Edwards were listed as representing the defendant, though Mr. Underwood's name does not appear elsewhere in the transcript. Mr. Edwards cross-examined each of the witnesses introduced by the State. When the Solicitor General was questioning the child's mother, Mr. Edwards at one point commented, "He is leading the witness a good deal," to which the court responded,

"Yes sir." That was the only objection to evidence assigned during the course of the trial. Mrs. Whitley, the child's mother, identified the child's underpants and testified that they bore blood stains. Mr. Allison, the Sheriff, testified without objection that he arrested Roberts at his mother's home, that Roberts was in bed and had on a shirt but no underpants and that he was not able to locate any shorts or drawers, that the tail of the shirt bore "some kind of stain."

"Q. Was that on the tail of the shirt at the time (indicating shirt to witness)?

"A. Yes sir.

"Q. I will get you to state at the time you examined it, what it appeared to be.

"A. Looks like a discharge to me.

"Q. Semen from the private part of of a man?

"A. Yes sir."

After a recess at the close of the oral testimony, the transcript of evidence concludes as follows:

"MR. WAYNE [the Solicitor General]: We tender in evidence the clothes of the little girl and also the clothes of the accused that were identified by the mother and the clothes of the defendant which were identified by the Sheriff, and with that we close.

"MR. EDWARDS: We have no objections to it.

"THE COURT: All right, they are in evidence."

As stated in the early part of this opinion, we accept the appellee's statement of the issue, viz: "whether the evidence supports the lower court's finding that appellant was not denied effective assistance of counsel?" Before proceeding to a discussion of that question, we may briefly dispose of a second issue presented by the appellant, viz: "(2) He was frustrated in his right of appeal by failure of his appointed counsel at the time to advise him of his right of appeal and to otherwise perfect such stated appeal." The Georgia Supreme

Court had considered and decided that Roberts' judgment of conviction was not subject to attack by habeas corpus on the ground that his counsel declined to appeal though requested by Roberts to do so. Balkcom v. Roberts, supra, 144 S.E. 2d at 525, 526. The evidence before the federal district court was much stronger against Roberts, for Mr. Underwood testified (and his testimony was believed by the district judge) that Roberts, after being thoroughly advised as to his right of appeal requested his attorneys not to appeal his case.[3] The finding of the district court on this second issue cannot be set aside as clearly erroneous.

■■ Did, then, the district court err in finding that Roberts was not denied effective assistance of counsel? That question is directed not so much to the competency of Mr. Edwards and Mr. Underwood as it is to their opportunity to prepare and their actual preparation of the defense of the case. It is now settled that the duty of the State court to appoint counsel for Roberts "is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." Powell v. State of Alabama, 1932, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158. Earlier language of the Court in that leading case is illuminating to the present decision:

"* * * during perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much entitled to such aid during that period as at the trial itself. * * *"

287 U.S. at 57, 53 S.Ct. at 59.

In Townsend v. Bomar, 6 Cir. 1965, 351 F.2d 499, the failure of appointed counsel to apply for a continuance before trial was held not to preclude the subsequent grant of habeas corpus, on the ground that the shortness of time allowed for preparation for trial denied the defendants' right to effective assistance of counsel. The rule was well stated by Judge Murrah for the Tenth Circuit in Willis v. Hunter, 1948, 166 F.2d 721, 723:

"We think that the right to the effective assistance of counsel contemplates the guiding hand of an able and responsible lawyer, devoted solely to the interest of his client; who has ample opportunity to acquaint himself with the law and facts of the case, and is afforded an opportunity to present them to a court or jury in their most favorable light."

■ We take judicial notice that White County, Georgia, is a rural county where indictments are most frequently returned and trials had during fixed sessions of court, where information concerning witnesses and events is more generally known than in large cities, and, accordingly, where the necessary preparation can often be accomplished during court week, as was the case with Bibb County, Alabama, referred to by Mr. Justice Black in Avery v. State of Alabama, 1940, 308 U.S. 444, 450–452, 60 S.Ct. 321, 84 L.Ed. 377. Accordingly, whether Roberts' right to the effective assistance of counsel was denied by the shortness of the time allowed for preparation depends upon the particular circumstances of the case.

How much time was actually allowed? Roberts' testimony that he remained in jail from the first part of July until the day of trial, October 11, without assistance of counsel, or indeed of relatives or friends, is not disputed. Indeed, in his brief in the Supreme Court of Georgia,

---

3. Roberts' failure to appeal because, as stated by Mr. Underwood, "* * * he might win a new trial and he might get worse and might get electrocuted at the next trial * * *" does not justify the withholding of federal habeas corpus relief. Fay v. Noia, 1963, 372 U.S. 391, 399, 83 S.Ct. 822, 9 L.Ed.2d 837.

the Warden of the Georgia State Prison admitted that the day of trial, October 11, was the day on which counsel was appointed.[4]

Mr. Underwood admitted that he did not discuss the case with the defendant Roberts before the trial and gave as his reason: "Because he [Edwards] stated to me he spent thirty or forty minutes with him going over the case, in jail." Roberts denied that either Edwards or Underwood had conferred with him about the case. We will assume, however, that the district judge could properly credit the purely hearsay testimony of Underwood as to what Edwards had told him. Was that adequate preparation for the trial? The trial was for a capital offense on which, according to Underwood, Roberts feared a sentence to death by electrocution. In Avery v. State of Alabama, supra at p. 452, 60 S.Ct. at p. 325, the Supreme Court found:

"That the examination and preparation of the case, in the time permitted by the trial judge, had been adequate for counsel to exhaust its every angle is illuminated by the absence of any indication, on the motion and hearing for new trial, that they could have done more had additional time been granted."

Does it likewise appear in this case that counsel exhausted every angle and could not have done more had additional time been granted? The evidence of penetration was barely sufficient under the Georgia rule.[5] Dr. Neal testified:

"Q. Now Dr. Neal, I will ask you from your examination of this little girl, if in your opinion, there had been a penetration within the vulva?

"A. Yes, there had been—apparently something had entered against the vulva.

\* \* \* \* \* \*

"Q. As to the penetration, I want you to be very positive about that— a lot depends on that—was she penetrated?

"A. Well, if she was penetrated by a male organ, it would have to be a very small one—that is my opinion.

"Q. What about a slight penetration —anything like a slight penetration?

"A. You mean—

"Q. You know what I mean by penetration.

"A. Well, that I don't feel like saying. Some penetration or attempted penetration could have been made and gone quite a distance up—the tissues are elastic and give.

"Q. You say there could have been a penetration or slight penetration?

"A. That is possible.

---

4. "Defendant was brought before the Superior Court of White County, Georgia, on October 11, 1951, and upon being asked by the Court if he had an attorney, replied in the negative whereupon two members of the bar, C. H. Edwards and T. F. Underwood, were appointed to serve as his counsel.

"The defendant plead 'not guilty' and after a trial by jury, was found guilty with a recommendation of mercy and his punishment fixed by the jury at a minimum of twenty (20) years and a maximum of twenty (20) years."

5. "Under the established rule in this State, the penetration of the female sexual organ by the sexual organ of the male, which is necessary to constitute rape, need be only slight. It is not necessary that the vagina shall be entered or the hymen ruptured, but an entering of the anterior of the organ, known as the vulva or labia, is sufficient. Morris v. State, 54 Ga. 440, 441; Ravenal v. State, 153 Ga. 130(2), 111 S.E. 643; Hall v. State, 29 Ga.App. 383(1a), 115 S.E. 278; 44 Am. Jur. 903, § 3; 52 C.J. 1015, § 24." Lee v. State, 1943, 197 Ga. 123, 28 S.E.2d 465. See also, 75 C.J.S. Rape § 10b, pp. 472, 473.

\* \* \* \* \* \*

"Q. What you told the jury was that there was not a complete penetration of the vagina?

"A. I doubt there was a complete penetration of the vagina.

"Q. You wouldn't say there wasn't?

"A. No, but I doubt it.

"Q. There could have been a penetration of the lavia [sic] by a male organ with no more damage than you saw?

"A. Yes, sir.

"Q. I believe you stated there had been some penetration by some object?

"A. Yes sir.

\* \* \* \* \* \*

"Q. The abrasions you observed were on the inside?

"A. Well, some were on the outside of the vulva and some on the inside of what we call the inside folds—you might say of the outside portion of the vulva.

"Q. For abrasions to be on the inside of that lavia [sic] or fold it would be necessarily caused by penetration of something?

"A. Yes sir, to that point."

Testimony of the child and her mother was slightly more positive. On this critical point, however, we cannot say that counsel could have done more had additional time been granted.

The eight-year-old girl testified that the rape occurred on the front seat of Roberts' automobile, with no other persons present except her three-year-old brother and four-year-old sister, who were playing in the back. In Roberts' unsworn statement [6] to the jury, he claimed that he had never been in the car with the children unless some adult was also present, and disclosed enough information from which an investigation might have resulted in the discovery of adult witnesses to corroborate his testimony.

If we assume, however, that no witness could be discovered and that Roberts was the only witness for the defense, it was all the more important that he testify. At the time of Roberts' trial on October 11, 1951, Georgia statutes provided that a person charged with an indictable offense was not competent to give evidence for himself, but that he could make an

6. "STATEMENT OF THE DEFEND-ANT', MARVIN ROBERTS

"Gentlemen, I was out there twice that afternoon. I went out there and they was [sic] eating lunch when I went there. I stayed awhile. There was a '41 Ford, with two boys and her sister and two girls came up and stayed awhile longer. I stayed awhile longer and her sister and the little girl over there and a couple more kinds [sic], we left and we come [sic] to town right over at this station over here and talked to Pete Robinson, and left there and went to my mother's house and from there back to Pete's and picked up a poke of apples and I took them back to their house and we got out there that time. I started to leave and Ted went with me. We went to her other sister's house across the bridge they been [sic] talking about up there about a mile and a half there. We stayed there awhile and the kids were with us that time. They played awhile and they didn't stay in the car, they were somewhere playing and on the way back her husband said something about getting some whiskey, and we went on and got the whiskey and we come [sic] back that time and I was in the living room sitting and talking to them, and she asked to use my car. I don't know whether she used it or not. And they told me to lay on the sofa and go to sleep, but I don't know. We went and got the whiskey and drank it. So far as taking the kids off, I didn't take them off. The best of my honor, I didn't take them off without somebody with me. There was [sic] two times—only two times I left with anybody and somebody was with me. And as for the shirts having something on them, I put a brake lining in my car before I left Atlanta and that was brake fluid. I left Atlanta Sunday morning about one o'clock, and that is what that is. I put a brake lining on my car before I left."

unsworn statement to the jury.[7] Those statutes were radically amended in 1962 to meet the opinion in Ferguson v. State of Georgia, 1961, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783. The holding of the Court in that case was expressed as follows:

> "We therefore hold that, in effectuating the provisions of § 38–415, Georgia, consistently with the Fourteenth Amendment, could not, in the context of § 38–416, deny appellant the right to have his counsel question him to elicit his statement." 365 U.S. at 596, 81 S.Ct. at 770.

Mr. Justice Frankfurter and Mr. Justice Clark wrote separate concurring opinions expressing the view that § 38–416, making a defendant incompetent to give evidence for himself, was unconstitutional. The majority refused to reach that question for the reason stated in footnote 1 of the opinion, 365 U.S. at 572, 81 S.Ct. at 758:

> "1 It is suggested in the concurring opinions that we should nevertheless adjudicate the validity of § 38–416. Apart from the incongruity of passing upon the statute the appellant expressly refrained from attacking, and disregarding his challenge to the statute he did call in question, such a course would be disrespectful of the State's procedures. For it appears that the Georgia Supreme Court would not have entertained an attack on § 38–416, since the appellant did not offer himself to be sworn as a witness. See Holley v. Lawrence, 194 Ga. 529, 22 S.E.2d 154; appeal here was dismissed on the express ground that 'the judgment of the court below rests upon a non-federal ground adequate to support it, namely, that the failure to tender such testimony at the trial barred any later claim of the alleged constitutional right. * * *' 317 U.S. 518, 63 S.Ct. 394, 87 L.Ed. 434."

The case of Holley v. Lawrence, referred to in the quoted footnote, was decided by the Georgia Supreme Court in 1942 and by the Supreme Court of the United States in 1943. If time had permitted, a study of that case might have persuaded Roberts' appointed counsel to offer the defendant as a witness in his own behalf.

The Supreme Court in Ferguson v. State of Georgia, supra, discussed at length the advantages to a defendant of testifying as a witness in his own behalf instead of giving an unsworn statement (See 365 U.S. 586–596, 81 S.Ct. 769), saying in part:

> "This survey of the unsworn-statement practice in Georgia supports the conclusion of a Georgia commentator: 'The fact is that when the average defendant is placed in the witness chair and told by his counsel or the court that nobody can ask him any questions, and that he may make such statement to the jury as he sees proper in his own defense, he has been set adrift in an uncharted sea with nothing to guide him, with the result that his statement in most cases either does him no good or is positively hurtful.' 7 Ga.B.J. 432, 433 (1945)."

As said in Pickler v. State, 1964, 220 Ga. 224, 138 S.E.2d 171, 172:

> "The Ferguson case cites in support of the view many opinions of this court which definitely point out the advan-

---

7. "38–415. *Prisoner's statement; oath; weight; cross-examination.*—In all criminal trials, the prisoner shall have the right to make to the court and jury such statement in the case as he may deem proper in his defense. It shall not be under oath, and shall have such force only as the jury may think right to give it. They may believe it in preference to the sworn testimony in the case. The prisoner shall not be compelled to answer any questions on cross-examination, should he think proper to decline to answer."

"38–416. *Person not competent or compellable to testify for or against self.*—No person, who shall be charged in any criminal proceeding with the commission of any indictable offense or any offense punishable on summary conviction, shall be competent or compellable to give evidence for or against himself."

Ga.Code Ann., §§ 38–415 and 38–416.

tage of sworn testimony over an unsworn statement. Underwood v. State, 88 Ga. 47, 13 S.E. 856; Vaughn v. State, 88 Ga. 731, 16 S.E. 64; Medlin v. State, 149 Ga. 23, 98 S.E. 551; Chapman v. State, 155 Ga. 393, 117 S.E. 321; Prater v. State, 160 Ga. 138, 127 S.E. 296; Willingham v. State, 169 Ga. 142, 149 S.E. 887; Douberly v. State, 184 Ga. 573, 192 S.E. 223; Allen v. State, 194 Ga. 430, 22 S.E.2d 65; Cofer v. State, 213 Ga. 22, 96 S.E. 2d 601. In the cases cited much emphasis is put upon the difference in the grade of proof between sworn testimony and an unsworn statement, and they make very clear that while the jury may believe an unsworn statement in preference to the sworn testimony given on the trial of a criminal case the sworn testimony is ordinarily ascribed more weight and credit than an unsworn statement."

Thus lack of preparation may have deprived the defendant Roberts of the benefit of the testimony of the only witness for the defense, the defendant himself.

Roberts' unsworn statement, quoted in note 6, supra, was introduced in the following manner:

"MR EDWARDS: I think we will let him make his statement.

"The defendant takes the stand to make his statement and is told by the Court:

"THE COURT: You have a right to make to the Court and Jury just such statement in your own behalf as you see fit. You are not under oath, *nobody can ask you any questions.* Now, speak out where those gentlemen can hear you." (Emphasis added.)

If the effect of that part of the statement by the court to Roberts which we have emphasized was to deny to him the right to have his counsel elicit his statement, that alone denied him the effective assistance of his counsel at a crucial point in his trial.[8] On the alternative assumption that the court did not intend by that statement to exercise its so-called "discretionary" power to deny or permit counsel to guide their client,[9] then, even if more adequate preparation would not have persuaded Roberts' appointed counsel to offer the defendants' sworn testimony in his own behalf, it might have induced them to request the court's permission for counsel to guide their client in the making of his unsworn statement. Actually, Roberts' counsel did not undertake to aid him in making his unsworn statement, but at its conclusion simply stated: "When you are through, you can come down."

Not only might Roberts' counsel have been able to develop further evidence for the defense, but they might also have been able to materially weaken the evidence for the prosecution if time had permitted. For example, they may have been able to show that the stain on Roberts' shirt was brake fluid as he claimed in his unsworn statement. Certainly they could have successfully excluded the following testimony of Sheriff Allison:

"Q. I will get you to state at the time you examined it, what it appeared to be.

"A. Looks like a discharge to me.

"Q. Semen from the private part of a man?

"A. Yes sir."

What has been said is by no means exhaustive of the things which counsel might have done to more thoroughly prepare the case for the defense if time had permitted. In brief, the defendant Roberts, accused of a capital crime, remained in jail without counsel from early July until the day of his trial, October 11. Two lawyers were then appointed to

8. Ferguson v. State of Georgia, 1961, supra, 365 U.S. 570, 575, 81 S.Ct. 756, 5 L.Ed.2d 783.

9. Shoffeitt v. State, 1963, 107 Ga.App. 217, 129 S.E.2d 572; Dukes v. State, 1964, 109 Ga.App. 825, 137 S.E.2d 532, 536; Williams v. State, 1965, 220 Ga. 766, 141 S.E.2d 436; Anthony v. State, 1965, 112 Ga.App. 444, 145 S.E.2d 657, 658.

represent him. One of these lawyers conferred with him for some forty minutes. The other never talked to him. His trial began and within an hour and a half from the time Roberts was brought to court he was returned to jail under a twenty-year sentence. The trial itself evidences a total lack of preparation on the part of counsel. We are left in no doubt that Roberts was tried and convicted without the effective aid of counsel, and, hence, that the judgment of conviction is unconstitutional and void. The judgment of the district court is therefore reversed and the case remanded, with directions that, unless the State of Georgia, within a reasonable time, elects to retry the applicant Roberts on the charge contained in the indictment, the court grant the writ of habeas corpus and discharge the applicant from custody.

Reversed and remanded.