256 So.2d 443

**STATE of Louisiana ex rel.
Lawrence MAGEE**

**v.**

**C. Murray HENDERSON, Warden, Louisiana State Penitentiary.**

**No. 52101.**

Jan. 27, 1972.

Dissenting Opinion Jan. 28, 1972.

In re: Lawrence Magee applying for writ of habeas corpus.

Writ denied. On the basis of the evidentiary hearing held by the trial court, we find no error in its factual finding that the 1959 guilty plea was voluntary and that the accused had effective counsel.

BARHAM, J., is of the opinion the writ should be granted and assigns reasons.

BARHAM, Justice (dissenting from refusal to grant writ).

We had previously ordered an evidentiary hearing on a writ application for this relator. That hearing was had, and the writ was denied in the trial court. Relator here invokes our original and supervisory jurisdictions under a new petition for writ of habeas corpus.

At the evidentiary hearing it was disclosed that the judge who accepted the pleas of guilty which are here in contest and the court-appointed lawyer who represented relator-defendant at those pleas are both dead. However, the State and the defendant have presented a record of reconstruction of the events pertinent to this writ as satisfactory as if the judge and the attorney had both testified themselves. I now narrate all the pertinent events as gleaned from the official records and from the transcript of the evidentiary hearing.

The defendant was arrested on November 28, 1959, and incarcerated in the Washington Parish jail in Franklinton. He was booked originally for aggravated burglary, and later was informed that he was to be charged also with attempted aggra-

-vated rape. At some time after the defendant's arrest and imprisonment in the jail in Franklinton, perhaps two or three days later, he was, according to the deputy sheriff who apparently had charge of his incarceration, removed by that deputy to a jail in Amite. The deputy testified that he believed that the defendant "might be in a little danger or might be subject to having a little trouble" if he remained in the parish jail because the atmosphere of the general public was "a little tight". During this time the deputy informed the defendant what he was charged with, and also informed the defendant that "someone was trying to kill" him.

On December 8, 10 days after the alleged burglary and attempted rape and the arrest of the defendant, he was brought back from the Amite jail to the courtroom in the Washington Parish courthouse at Franklinton. According to the assistant district attorney who prosecuted the case (now the district attorney), it was a civil day for the court and not a criminal day or a regular arraignment day, and the defendant was brought from Amite on this particular day at the request of this assistant district attorney or the sheriff for the special purpose of arraignment. The prosecuting attorney talked with the judge and asked him whom he intended to appoint to represent "this man because of the seriousness of the charges." The prosecuting attorney then made available to the lawyer chosen by the judge the district attorney's file. This may have occurred before the lawyer was appointed, but certainly if it did, it occurred in the courtroom and almost simultaneously with the calling for arraignment. When the defendant was called for arraignment, the judge, noting lack of counsel, appointed the attorney. Defendant states that his appointed counsel never discussed the case with him and simply ordered him to plead guilty. However, for the purpose of this dissent I accept the testimony of the prosecuting attorney. It is related that after the lawyer had looked at the file, he took the defendant from the courtroom. The witness does not recall how many minutes they were absent, but certainly it was a matter only of minutes. For the purpose of this dissent I will assume that the attorney discussed the case with the defendant during that time. The lawyer and the defendant returned to the courtroom. Defendant was arraigned and pleaded guilty to a bill of information for attempted aggravated rape and a bill of information for aggravated burglary. The court immediately imposed the maximum sentence for attempted aggravated rape (R.S. 14:27), 20 years, and the maximum sentence for aggravated burglary (R.S. 14:60), 30 years, to run consecutively.

After an examination of the official record and an examination of the transcript of the evidentiary hearing and after affording the State a favorable interpretation of that evidence, I am convinced that this defend-

ant was denied due process and the right to counsel, in violation of our state and federal Constitutions.

First, although Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, is not retroactive, every plea of guilty ever received, even before Boykin, had to result from voluntary and knowing action. I am convinced that this 23-year-old defendant, who was jailed after the alleged acts and kept concealed in a foreign jail (admittedly for his own protection) during most of the pre-plea incarceration; who was under the apprehension during this time that his life was in danger; who only 10 days after the alleged offenses and his arrest was brought into a courtroom on a day when other criminal defendants were not present for whatever comfort they might offer; who at the very best had a few minutes' consultation with counsel just appointed by the court; who pleaded guilty and was given every single year of sentence he could have received after trial; and who was sentenced without delay to those maximum terms, did not of his own volition with knowledge of the consequences of his acts enter the pleas of guilty. Defendant's pleas cannot under the circumstances be said to have been a voluntary and knowing act as required even before Boykin.

Second, the defendant complains in his application here of incompetent counsel. I will readily admit that the testimony at the hearing discloses that his lawyer was · a most competent attorney. I need not weigh the qualities of the lawyer to make this determination of competency of counsel. The most competent lawyer acting in the manner and under the circumstances here depicted would have afforded this defendant only incompetent counsel.

Assistance of counsel as guaranteed by the Constitutions must be substantial and must be effective. Perfunctory appearance of counsel does not satisfy either Article 1, Section 9, of the Louisiana Constitution or the Sixth Amendment of the United States Constitution. Even if it were required as a matter of law that the *defendant* show prejudice resulted from representation by counsel who was appointed immediately before the plea, I must conclude from this record alone that there was prejudice. The defendant could have suffered no greater prejudice if he had been denied assistance of counsel. However, the general rule is that where the delay between appointment and court appearance of counsel is so brief as to afford a presumption· of inadequate assistance of counsel, the burden shifts to the prosecution to establish affirmatively that no prejudice did in fact occur. United States v. Helwig, 159 F.2d 616 (3rd Cir. 1947); United States ex rel. Mathis v. Rundle, 394 F.2d 748 (3rd Cir. 1968); Coles v. Peyton, 389 F.2d 224 (4th Cir. 1968); Roberts v. Dutton, 368 F.2d 465 (5th Cir. 1966); Townsend v. Bomar, 351 F.2d 499 (6th Cir. 1965). · The State has certainly

not discharged the burden under the rule above enunciated. In any event, my examination of the record discloses prejudice which could not be refuted by the State.

Third, under the combination of circumstances first related concerning arrest, detention, public emotions, the communication to the defendant of threatened danger, the brief time-lapse between the offenses and imposition of sentences, the unusual court day for arraignment, the appointment of counsel only minutes before pleas and sentences, the maximum sentences being immediately imposed, the lack of delay between conviction and sentences, I can but conclude defendant's pleas of guilty were exacted under proceedings which denied him due process of law under Article 1, Section 2, of the Louisiana Constitution as well as the Fourteenth Amendment to the United States Constitution.

I additionally note that this defendant has been in Louisiana State Penitentiary according to the official records of that institution from the date of his incarceration to this date. I note this because of the language in my concurrence in the denial of writs in State ex rel. Garrett v. Henderson, 257 La. 564, 242 So.2d 891, which, by the way, arose in the same parish. There are several differences between the Garrett case and this case. The relator there had been free from prison on parole and then recommitted. Under his allegations the testimony of the deceased officers of court

could have been material, whereas here I have so construed the evidence that the testimony of the deceased could provide no more.

For the reasons assigned I respectfully dissent from the refusal to grant the writ.